ST. PAUL, J.
This is an appeal from a conviction and sentence under the provisions of Act 57 of 1908, commonly called the Locke Law, and entitled:
“An act to prohibit gambling on horse races by the operation of betting books, French mutual pooling devices, auction pools, or any other device, and to provide penalties for the violation of the provisions thereof.”
[1] As the question presented is not whether racing and betting on horse races be or be not commendable or reprehensible or beneficial or detrimental, but simply whether this defendant, by doing the things with which he is charged, has violated the above-named law, the answer thereto must be determined according to well-settled principles of criminal jurisprudence, universally accepted, to wit, that in order to enforce a penalty against a person he must be brought clearly within the letter, as well as within.the spirit, of the statute; regardless even of the gravity of the mischief to be remedied. United States v. Sheldon, 2 Wheat. 119, 4 L. Ed. 199.
“A penal statute must be strictly construed, and cannot be extended to cases not included within the clear import of its language; nothing is a crime which is not clearly and unmistakably made a crime.” State v. Breffeihl, 130 La. 905 (913), 58 South. 763, and authorities there cited.
I.
The question was raised by way of demurrer to the information filed by the district attorney, charging that the defendant—
“did by a certain device and devices encourage, promote, aid and assist the general public, and certain persons whose names are * * * unknown, to bet and wager upon certain horse-races,” etc.
Which device and devices are, in the said information, said to consist of this:
That said defendant was “a professional racehorse gambler of that variety known as a layer.” ^
That he carried “a program bearing the name-of each horse to run.”
That he “occupied a permanent stand in the-betting ring.”
That he wore “a large placard conspicuously bearing his name.”
That he “announced to each. person, when-asked, the odds offered on individual horses.”'
*877 That “the bettor” thereupon wrote on, a card his own name and the details of his bet, which card, together with the money bet, he handed to the defendant, who thereupon, “announcing in a loud voice,” kept the card and handed the money to an assistant.
That after each race the defendant, through' another (or the same) assistant, paid each winner upon his identifying himself by signing the card which he had given defendant.
Which said device and devices are charged to be contrary to the form of the statute, etc. And which statute is as follows:
“Be it enacted by the General Assembly of the state of Louisiana, that
“Any person who, either as agent, owner, officer, or employee,
shall, in any room, hall, house, or any inelosure, or upon any track, path, road, or course, whether within or without an inclosure, in this state, engage in encouraging, promoting, aiding or assisting in the operation of a betting book, or a French mutual pooling device, upon any kind of horse race or races, or in selling auction pools upon any horse race, which are hereby declared to be gambling,
or shall, by any other device, encourage, promote, aid or assist any person or persons to bet or wager upon a horse race or races, run or trotted or paced, within the state or elsewhere,
shall be guilty of a misdemeanor, and upon conviction, shall he fined not less than one hundred dollars nor more than five hundred dollars; and imprisoned for a period of not less than six nor more than twelve months.”
II.
The substance of the title to the foregoing act being therefore this:
“An act to prohibit gambling on horse races by the operation of betting books, French mutual pooling devices, auction pools, or any other device. * * * ”
The substance of the body of the act being as follows:
Any person who shall engage or assist in the •operation of a betting book, or a French mutual pooling device, or in selling auction pools, on any- horse race,
•or shall, by any other device, encourage or assist any person to bet or wager, on any horse race,
shall be guilty, etc.
And the substance of the charge against this defendant being that he—
“did by a certain device * * * encourage, promote, aid and assist the general public, and certain persons * * * to bet and wagei upon certain horse races. * * * ”
III.
The demurrer avers:
(1) That the information sets forth no crime known to the law; and (2) that all of that portion of said act which reads, “or shall, by any other device, encourage, promote, aid or assist any person or persons to bet or wager upon a horse race or races * * * shall be guilty,” etc.,
(a) does not define the offense which it seeks to cover: and,
(b) if it does define an offense, is therein broader than the title of the act.
IV.
As the statute declares any person guilty of an offense who shall “by any other device, encourage, promote, aid or assist any person or persons to bet or wager,” 'etc., and the information charges that this defendant “did, by a device and devices, encourage, promote, aid and assist the general public, and certain persons * * * to bet and wager,” etc., it follows that the information charges the alleged offense in the very words of the statute, so that the information suffices to charge the offense, if the statute itself suffices to create such an offense. And that brings us to the second phase of the demurrer.
Y.
[4] To define soinething is essentially to mark the limits and fix the meaning thereof “in such manner that the definition will not apply to any other object than that defined.” Bermudez, C. J., in McDougall v. Monlezum, 38 La. Ann. 229.
[3] And if the word “device” as used in the statute for the second time should be taken in connection with its use therein for ■the first time, to wit, “French mutual pooling device,” and under the rule ejusdem generis, *879 be taken to mean some device of similar character (and we think it must), then the statute is not open to the objections leveled against it.
But if the word “device,” when used for the second time as aforesaid, is to be given the meaning contended for by the state, to wit “a plan adopted for the accomplishment of a certain purpose, and generally * * * for accomplishing that purpose by indirection, and implies cunning and deceit,” then the second part of the statute is open to both objections.
For “device” does not necessarily, or even primarily imply cunning or deceit or indirection. And in the statute before us there is nothing whatever to indicate that cunning or deceit or indirection is an element of any offense thereunder.
Hence the second .part of the statute, if the word' “device” is to bé taken in a wider sense, makes it an offense for any person, by any device (or plan or means), to encourage or assist any other person to bet or wager on a horse race, and is sufficiently broad to include any person who (for instance) publishes or circulates any racing chart or information about races to be run, with the weights and entries, the previous performances of the horses, the betting odds, probable winners, etc. For if such information does not encourage, it at least assists in betting and wagering on horse races. Nor is it to be doubted that maintaining a race course, with betting ring and all the other paraphernalia thereof, is a plan or device to encourage and assist in betting and wagering on horse races.
And it is to be observed that the second part of the statute does not require that the person who encourages or assists shall himself take any part in the betting. It suffices that he encourage or assist another to bet or wager.
[2] And thus we have an offense so broad as to include a host of persons, who now have no thought or conception that their acts are unlawful, and whose number can be limited only at the will and according to the opinion of juries and judges, as to who should and who should not be punished under the statute; and an offense, to wit, “encouraging and assisting to bet or wager,” which is not covered by the title of the statute, indicating a purpose only to prohibit gambling “by the operation of betting books, French mutual pooling devices, auction pools, or any other device.”
“Every man should be able to know with certainty when he is committing a crime. * * * It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large.” United States v. Reese, 92 U. S. 220, 221 (23 L. Ed. 563.)
[5] Nor yet will it do to say that the persons above mentioned need fear nothing from the statute, since, even if they should come within the letter thereof, yet they do not come within its spirit, as the statute is aimed only at “commercialized gambling.” For to commercialize gambling is simply to make it a source of sure and steady profit; and it is immaterial whether such profit be derived from percentages or winnings, or from the sale of franchises, or of programs and information, for the incentive in each case is the same.
VI.
In State v. Austin, 142 La. 384, 76 South. 809, the defendant was convicted of “orally operating a betting book,” but the acts and things set forth in the information against him (as shown by the analysis thereof given in the appendix hereto), were in substance and almost in detail the same as set forth in the information herein above given. This court held that it was “quite clear” that the things set forth constituted “oral bookmak *881 ing” (142 La. 391, 76 South. 811), but that oral bookmaking was not forbidden by the statute (142 La. 390, 76 South. 811), and that “defendant has not been charged with haying committed an offense within the meaning of Act No. 57 of 1908.” This case was finally decided in November, 1917.
VII.
It therefore stands written in the book of our jurisprudence, and had stood so written for more than three years before the information was filed against this defendant, as a standard and guide for him and for others, that the things with which Austin had been charged and which differ in no essential detail from those with which this defendant is now charged, constituted “oral bookmaking,” and constituted no violation of the statute under which this defendant is now prosecuted.
So that thereafter, to wit, about a year ago and about the time when the information was filed against this defendant, when one McBride was charged in Jefferson parish with doing the very same things which had been charged against Austin and are now charged against this defendant (see appendix annexed), and it was charged that these constituted a device, the accused promptly demurred to the charge.
The trial judge found that the acts and things charged were the same as those set forth against Austin, and thereupon held that these things did not constitute a device within the meaning of the act. Whereupon the state applied to this court for writs of certiorari and mandamus to compel the lower court to entertain and proceed with the case, which writs this court refused to issue, thus approving the ruling of the trial judge. State v. T. E. McBride (our No. 24,432), 152 La. -, 93 South. -.
We are therefore of the opinion that the matters and things set forth in the information. constitute oral bookmaking, and that oral bookmaking is not a device within the meaning of the statute, and constitutes no violation thereof.
Decree.
The judgment and sentence of the lower court are therefore set aside; and it is now ordered that the demurrer herein filed be sustained, and the accused discharged.
THOMPSON, LAND, and BAKER, JJ., dissent.
Appendix.
Substance of Information against Edwin Austin (142 La. 386, 387, 76 South. 809).
That said defendant was “a professional racing man.”
That he had in his possession “a racing program upon which was printed the names of the horses,” etc.
That he “walked at will, or stood, on the grounds * * * where horse races were conducted.”
That he “had in his possession money for the purpose of betting on said races.”
That he announced to various persons, when asked, the odds he would give against certain horses.
That those desiring to bet with him wrote on a slip of paper their names, and the details of the bets they made; which slips of paper, together with the money bet, were put by said defendant in his pocket.
That “at the conclusion of the race the said defendant paid off the persons who had bet on the winner, taking a receipt on the bettor’s original slip of paper herein above referred to.”
(Charged as constituting oral Tyoohmahing.)
Substance of Information against T. E. McBride (Our No. 24432).
That said defendant was “a professional racing man.”
That “he had in his possession a program upon which was printed the names of the various horses,” etc.
That “he stood within the enclosure of the said race track at or near the grand stand.”
That “he had a slip of paper attached to the lapel of his coat upon which was printed his name,” and money to bet on the various races.
That he announced to various persons, when asked, the odds he would give against certain horses.
That those desiring to bet with him wrote on a slip of paper, their names and the details.of the bets they made; which slips of paper, together with the money bet, were put by said defendant in his pocket.
That after said race had been run the winner called upon the defendant, and upon signing the slip of paper which he had given to defendant, was paid the amount of his winnings.
(Charged as constituíing a device.)