56 So.2d 724

**STATE v. JONES.**

No. 40423.

Dec. 10, 1951.

J. B. Nachman, Alexandria, for defendant-appellant.

Bolivar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Ass't. Atty. Gen., Ben F. Thompson, Jr., Dist. Atty., George Foote, Ass't. Dist. Atty., Alexandria, for appellee.

FOURNET, Chief Justice.

The defendant, Sam Jones, having been sentenced to serve twelve months in the parish jail subject to work, after trial and conviction of the offense of criminal neglect of family—in that he intentionally deserted and failed to provide for the support of Sam Dixon, Jr., an illegitimate minor child in destitute and necessitous circumstances—prosecutes this appeal.

The minor, Sam Dixon, Jr., was born to the prosecuting witness, Lillie Belle Dixon, a 26 year old unmarried colored girl, on October 22, 1946. She claims that the defendant is the father of this child. The record reveals that she is the mother of two other children, the fathers of whom she admits are different men (not the defendant): Mary Belle Dixon, born in 1948, and Audrey Fay Dixon, born in 1949.

This prosecution is based on LSA–R.S. 14:74, as amended by Act No. 164 of 1950, the amendment being indicated by the italicized portion below:

"Criminal neglect of family is the desertion or intentional non-support:

"(1) By a husband of his wife who is in destitute or necessitous circumstances; or

"(2) By either parent of his minor child, *whether legitimate or illegitimate,* who is in destitute or necessitous circumstances. *Solely for the purpose of determining the obligation to support, the court shall admit proof of paternity or maternity, or both.*

*"Whenever a husband shall have left his wife in destitute or necessitous circumstances and has not provided her with means of support within sixty days thereafter, his failure to so provide shall be presumptive evidence that at the time of leaving he intended desertion and non-support. When either parent shall have left his minor child, whether legitimate or illegitimate, in destitute or necessitous circumstances and has not provided support within sixty days thereafter, his failure to so provide shall be presumptive evidence that at the time of leaving he intended desertion and non-support.*

"Whoever commits the offense of criminal neglect of family shall be fined not more than five hundred dollars, or imprisoned for not more than one year, or both; and if a fine should be imposed, the court may direct it to be paid in whole or

in part to the wife, or to the tutor or custodian of the minor child or children, or to an organization or individual approved by the court as fiduciary for such wife or child."

Pleas of unconstitutionality urged in the lower court are apparently abandoned here, and the defendant is now relying on the contention that he was improperly convicted for the reason that under the law of Louisiana, as a condition precedent for alimony or support of an illegitimate child, there must either have been an acknowledgment in the manner required under our law by the father, or the child must have been declared to be the child of the father by judgment duly pronounced; whereas the trial judge overruled his objection to any other type of proof and convicted the defendant in contravention of the substantive law of this State on the uncorroborated testimony of the mother, admittedly a woman of dissolute manners in that since the birth of the minor, Sam Dixon, Jr., she bore two children by different fathers. To hold otherwise, he contends, is illegal, for the minor, Sam Dixon, Jr., was conceived and born in 1946, four years prior to the adoption of Act No. 164 of 1950 making it a crime to criminally neglect an illegitimate child, which is a new offense under our law not punishable when the child was conceived; and to make the act punishable at this time is ex post facto, in contravention of the State and United States Constitutions.

It is the contention of the State, on the other hand, that the proof required under the act is to establish the fact that the defendant was responsible for this child's birth and that no more is required of the State than this proof of responsibility; and the articles of the Revised Civil Code, to be found in the section pertaining to father and child, must be read in pari materia with that part of the law which regulates the duties, rights and obligations between parent and child, and is therefore irrelevant to the issues in the present proceeding by the State under a law which has for its purpose "the placing on parents the responsibility for the support of their children and removing the burden of supporting these children from the public welfare;" in the alternative, the State contends that there is a conflict between the provisions of Article 240 of the Revised Civil Code and Act No. 164 of 1950, "and the latter, being the latest expression of the Legislative will, must prevail."

From a study and analysis of the statute and its historical background the conclusion is inescapable that the Legislature, by its adoption of Act No. 164 of 1950, extending the offense of criminal neglect of family to include desertion and intentional non-support of illegitimate children, intended thereby to coerce the unwilling parent to fulfill his legal obligation to such child. Under our substantive law it is only those fathers who have legally acknowledged their illegitimate offspring

or who have been judicially declared to be the father of such offspring, who have a legal obligation to support them, see Art. 238 et seq., Revised Civil Code, to be found in Section 2, *"Of the Duties of Parents towards Their Illegitimate Children * * *,"* under Title VII, *"Of Father and Child"*.

The statute prior to its amendment in 1950 is an exact replica of Article 74 of the Criminal Code, adopted by the Legislature in 1942. Some two years after the adoption of the said Code this Court, in the case of State v. Clark, 208 La. 1047, 24 So.2d 72, 73 in reversing the conviction and sentence of the defendant on a charge of criminal neglect of family by the intentional desertion and non-support of his wife, held that it was error for the trial judge not to allow the defendant to show that he did not leave the complaining witness without just cause, for "it is elementary that there can be no desertion if, under our law, the defendant had the right to and was justified in leaving the matrimonial domicile, and that *there can never be an intentional nonsupport of a wife or child if there is no legal duty or obligation on the part of the husband and father to support them."* (Italics supplied.)

Despite this decision by a unanimous court in 1945, the Legislature, in adopting the Revised Statutes of 1950, reproduced Article 74 of the Criminal Code verbatim as LSA–R.S. 14:74, and in subsequently amending and reenacting this section, LSA–R.S. 14:74, at the Regular Session of 1950, simply extended the offense of criminal neglect of family to include illegitimate minor children, and, in addition, provided a presumption of intention as to desertion and non-support.

Criminal laws are strictly construed; only those acts are offenses which are clearly made so by the language of the statute, which cannot be extended further. LSA–R.S. 14:7; State v. Reed, 188 La. 402, 177 So. 252; State v. Whitlock, 193 La. 1044, 192 So. 697, and cases therein cited; State v. Truby, 211 La. 178, 29 So.2d 758; State v. Duncan, 219 La. 1030, 55 So.2d 234. The statute by clear implication, if not directly, declares that it is only a father under a legal duty or obligation to support his minor child who fails to do so, who is guilty of criminal neglect of family. This we think is clearly indicated by the definition of criminal neglect of family as being *"desertion* or *intentional non-support:* (1) * * * (2) By either parent of his minor child, whether legitimate or illegitimate * * *,"* as well as the provision declaring that "When either parent shall have *left* his minor child, whether legitimate or illegitimate, in destitute or necessitous circumstances and has not provided support within sixty days *thereafter,* his failure to so provide shall be presumptive evidence that at the time of *leaving* he intended desertion and non-support." (Italics supplied.)

Counsel for the State, in contending that LSA–R.S. 14:74, as amended, be-

ing the latest expression of the legislative will, must prevail, overlooks the well established canons of construction that prior laws are repealed by subsequent laws only in case of positive enactment or clear repugnancy, that repeals by implication are not favored and will not be indulged if there is any other reasonable construction, and that nothing short of irreconcilable conflict between two statutes works a repeal by implication. See State v. Standard Oil Company of Louisiana, 188 La. 978, 178 So. 601, 626; Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11; and State v. Randall, 219 La. 578, 53 So.2d 689. Moreover, in the last named case, when we had the identical statute under consideration, we pointed out that since the statute lacked an independent definition of an illegitimate child, this was supplied by the generally accepted definition as declared in Article 180 of the Civil Code, namely, a child born out of marriage; and that LSA–R.S. 14:74, as amended, authorizing the court to admit proof of paternity or maternity "[s]*olely for the purpose of determining the obligation to support*," did not repeal by implication the Civil Code provisions governing legitimacy and restricting proof of paternal and maternal descent. In that case the Court further observed that by giving Act No. 164 of 1950 the construction we do, there exists no conflict between it and the articles of the Civil Code respecting proof of paternity, and, they being reconcilable, the former does not repeal by implication the latter articles.

The views hereinabove expressed are not only in keeping with our well accepted rules of construction, but will maintain inviolate the long and well established public policy of this State, having for its object the safeguarding of the family unit and the protection of the individual against spurious and unfounded claims of paternity.

For the reasons assigned, the conviction and sentence are annulled and set aside, and the defendant is ordered released.

HAWTHORNE, J., concurs with written reasons.

HAMITER, J., dissents.

HAWTHORNE, Justice (concurring).

I am not in accord with the view of the majority that the statute here under consideration, Article 74 of the Louisiana Criminal Code, Act No. 43 of 1942, LSA–R.S. 14:74, should be given a strict interpretation or strictly interpreted. Since the statute is in the Criminal Code of this state, it must be interpreted in accordance with the directive in the Code on interpretation of its provisions. Article 3, LSA–R.S. 14:3, provides the rule of interpretation for the articles found therein, thus: "The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the

fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision."

Aside from the rule of interpretation as set forth in the quoted article, the comments thereunder disclose that it was the purpose of the drafters of the Code to depart from the rule of strict interpretation applicable to criminal statutes in interpreting the articles of the Criminal Code.

I concur in the result reached by the majority, for in my view, if Article 74 is interpreted under the rule announced by the Code in Article 3, the same result would be obtained.

I respectfully concur.