71 So.2d 315

**STATE v. MACK.**

No. 41276.

Feb. 15, 1954.

Watts & Rich, Franklinton, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Walton O. Seal, State's Asst. Atty., Bogalusa, James T. Burns, Dist. Atty., Covington, for appellee.

MOISE, Justice.

This matter now comes before us after reargument was ordained by this Court. Wilton Mack, the accused, was charged, tried and convicted of criminal neglect of family under LSA–Revised Statutes 14:74, Act 368 of 1952. He was sentenced to serve one year in the parish prison. This sentence was suspended upon the condition that the defendant pay $20 per week for the support of four alleged minor illegitimate children. From the sentence and conviction, the defendant appeals suspensively.

The record discloses that the defendant has annexed to this appeal all of the evidence taken in the lower court. There are sixteen bills of exception. The amendatory provisions of Act 368 of 1952, under which the accused is charged, is the lamp in the light of which the whole decision should be read. That amendatory provision states:

"In the case of an illegitimate child, evidence may be introduced in the proceedings hereunder to prove paternity or maternity. This proof shall be made in accordance with the rules established by the Revised Civil Code of 1870, as amended, as for proof of paternity or maternity for civil purposes. Such proof, however, shall be used solely as the basis for the duty to support an illegitimate child established by this article, and shall not be construed as establishing any civil obligation."

The State contends that the amendment hereinabove recited was passed. to overcome the rule of law enunciated in the cases of State v. Jones, 220 La. 381, 56 So.2d 724, and State v. Sims, 220 La. 532, 57 So.2d 177. In these cases, the guiding asserted principle of law is that in order to obtain a conviction there must be established the existence of a civil obligation to support, and this obligation must be expressed by either a notarial acknowledgment or a civil judgment of paternity. In other words, a prerequisite for conviction was proof of paternity by legal acknowledgment or civil judgment.

Article 242 of the LSA–Civil Code reads:

"But in order that they may have a right to sue for this alimony, they must:

"1. Have been legally acknowledged by both their father and mother, or by either of them from whom they claim alimony; or they must have been declared to be their children by a judgment duly pronounced, in cases in which they may be admitted to prove their paternal or maternal descent".

The above article has to be read in connection with Articles 208 and 209 of the LSA–Civil Code. Article 242 sets forth the right of children who have conformed with one or the other requirements—legal acknowledgment or civil judgment—to claim alimony. Article 209 prescribes the

manner of proof required and authorized for the purpose of obtaining a judgment of paternity against an alleged father. This judgment is necessary for the prosecution of the crime charged.

The issue before this Court is not a new question. The effect of the amendatory provision of Act 368 of 1952 was presented to this Court in the case of State of Louisiana v. Henry Holmes, No. 41,076 of the docket of this Court. The State of Louisiana applied for writs of mandamus, prohibition and certiorari. Henry Holmes, the defendant was charged under Article 74 of the Criminal Code, LSA–R.S. 14:74, with the desertion and willful neglect to provide for the support of his alleged illegitimate minor twins, Donald and Ronald. The judge of the Juvenile Court refused to convict, and writs were filed on December 4, 1952. The endorsement on the writs was as follows:

"Writ refused. The accused was properly discharged."

In his per curiam in that case, the able Juvenile Judge stated:

"The Supreme Court in State v. Sims, 220 La. 532, 57 So.2d 177, clearly outlined the only procedure possible under the law for establishing the paternity of illegitimate children. This decision (State v. Sims) developed from a case filed under Act 164 of 1950, amending and re-enacting R.S. 14:74 which sought to confer upon the

Juvenile Court jurisdiction of non-support charges against the father of illegitimate children and providing for proof of paternity of such children in Juvenile Court. The Louisiana Supreme Court did not question the right of illegitimate children to secure support under this statute but denied the right of said children to prove their paternity * * * unless proof was first made in accordance with the rules established by the Civil Code of 1870."

■ In the Holmes case, supra, the complaining witness for the State, as here, testified that the defendant had never acknowledged paternity of the children before a notary and two witnesses, nor had the children been declared to be the children of the defendant by judgment of court. Therefore, in this matter, as in the Holmes case, the defendant has not been established as the natural father of the illegitimate children by notarial acknowledgment, nor has he been pronounced as such by judgment of court. It is therefore self-evident that the condition precedent to sustain a conviction under the law has not been observed.

It is a duty of this Court to be watchful of the legal and constitutional rights of its citizens and guard them against any stealthy encroachment. Our motto should be "Obsta Principiis"—resist the first beginning. Do not let the tyranny of an erroneous legal concept get a start.

■ The Court is only construing the statute and in duty bound is to construe the words according to their natural meaning. State v. Vallery, 212 La. 1095, 34 So.2d 329; State v. Gardner, 151 La. 874, 92 So. 368; State v. Penniman, 224 La. 95, 68 So.2d 770. In a criminal case, we are admonished that penal statutes must be strictly construed. State v. Truby, 211 La. 178, 29 So.2d 758; Louisiana Code of Criminal Law and Procedure, Articles 3 and 7; LSA-R.S. 14:3, 14:7; State v. Jones, 220 La. 381, 56 So.2d 724. No appreciable change has been made in the statutory requirements. They are the same now as they were before the amendment was enacted.

For these reasons, the judgment of sentence and conviction is reversed and set aside, and the charge is dismissed.

HAMITER, Justice (dissenting).

The basis of the decisions in State v. Jones and State v. Sims (cited and relied on by the majority as controlling herein and, incidentally, in both of which I dissented), to the effect that Act No. 164 of 1950 denouncing criminal neglect of family had no application to the prosecutions there involved, was that our substantive law at that time imposed no obligation or duty upon a parent to support his illegitimate child, unless such child had been acknowledged by the parent in the manner required by the LSA–Civil Code or had been de-

clared as such by judgment rendered in an appropriate civil proceeding.

However, subsequent to those decisions, and obviously as a result thereof, the Legislature adopted Act No. 368 of 1952 which remedied the claimed deficiency by specifically establishing and imposing, for the purpose of prosecutions for criminal neglect of family, a duty or obligation on the part of a parent to support his illegitimate child, even though the parentage be not acknowledged or judicially decreed. Thus, such statute (also known as LSA-R.S. 14:74), insofar as pertinent, recites:

"Criminal neglect of family is the desertion or intentional non-support:

\* \* \* \* \* \*

"(2) By either parent of his minor child, whether legitimate or *illegitimate*, who is in destitute or necessitous circumstances, *there being a duty established by this article for either parent to support his child.* The parent shall have this duty without regard to his reasons and irrespective of the causes of his living separate from the other parent. *The duty established by this article* shall apply retrospectively to all children, legitimate or *illegitimate*, born prior to the effective date of this article." (Italics mine.)

With respect to the application for remedial writs in State v. Henry Holmes, No. 41,076 of the docket of this court and referred to in the majority opinion, I have only to say that I did not subscribe to the ruling and endorsement: "Writ refused. The accused was properly discharged." Rather, having entertained at the time a view consistent with that above expressed, I suggested that the writs should be granted.

For these reasons I respectfully dissent.

HAWTHORNE, Justice (dissenting).

I should like to state once again that I do not agree with the holding of this court in the cases of State v. Jones, 220 La. 381, 56 So.2d 724; State v. Sims, 220 La. 532, 57 So.2d 177, and State v. Love, 220 La. 562, 57 So.2d 187. As I said in my dissent to the majority opinion in State v. Sims [220 La. 532, 57 So.2d 186], the Legislature of Louisiana "has full power to make criminal any act or omission to act which it deems necessary for the public good, provided that by so doing it does not violate the provisions of the state or federal Constitution." Moreover, I did not agree with the majority of this court that writs should be denied in the case of State of Louisiana v. Henry Holmes, No. 41,076 on the docket of this court, and for this reason I did not sign the order denying the writs applied for by the State, relator in that case.

There is not any doubt that Act 368 of 1952 amending R.S. 14:74 was enacted by the Legislature to comply with the ruling of this court in State v. Jones and State v. Sims, supra. This amendment provides that criminal neglect of family is the

desertion or intentional nonsupport by either parent of his minor child, whether legitimate or illegitimate, who is in destitute or necessitous circumstances, and establishes the duty for either parent to support such child. The Legislature by this act clearly made it a crime for a father to fail intentionally to support his illegitimate child in necessitous circumstances. The amendment further provides that proof of paternity in the case of an illegitimate child shall be made in accordance with the rules established by the Civil Code of 1870, as amended, as for proof of maternity or paternity for civil purposes. The rules established by the Civil Code to prove paternity are found in Article 209, which provides that such proof may be made in any of the following ways:

"1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;

"2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;

"3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived."

The majority opinion in the instant case, however, concludes that such proof of paternity, although made strictly under the terms of the act itself, is not sufficient, but

that in addition thereto the defendant in such a case must be established as the natural father of the illegitimate child (1) by notarial acknowledgment or (2) by a judgment of the court in a civil proceeding, and that otherwise his conviction under the act cannot be sustained.

The making of laws and the formulating of the public policy of the state are functions of the legislative branch; the interpretation of these laws is the function of the judiciary. The Legislature by R.S. 14:74 and again by the amending statute of 1952, enacted after decisions of this court had rendered the original act inoperative as to unacknowledged illegitimate children, evinced its intent to make it a crime for a parent to fail intentionally to support his illegitimate child in necessitous circumstances, and the language of the act is so clear that only one interpretation is possible. By its holding in this case the majority of the court has usurped the function of the lawmakers and has written into the act restrictions and requirements which are not found in it and are not intended to be in it. As in the Jones and the Sims cases, the court here is again defeating the plain legislative intent without any right or authority in law to do so.

I respectfully dissent.

McCALEB, Justice (dissenting).

In State v. Jones, 220 La. 381, 56 So.2d 724 and State v. Sims, 220 La. 532, 57 So. 2d 177, this court was called upon to de-

termine the effect to be given to Act 164 of 1950, wherein the Legislature had, for the first time, extended the offense of criminal neglect of family to include desertion and intentional nonsupport by a parent of his or her illegitimate, as well as legitimate, children.

While finding that the Legislature intended to coerce parents to fulfill their obligation to their illegitimate children, we concluded that the statute was applicable only to cases in which there was a civil obligation placed upon the parent to provide support—that is, that its operation was to be confined to matters in which the illegitimate offspring had been legally acknowledged by the parent or where he had been declared to be such by judgment of court, in accordance with the provisions of the LSA–Civil Code on this subject. The rationale of these decisions was that it would be unreasonable to view the action of the Legislature as rendering an act or course of conduct criminal for which no civil responsibility was imposed.

The last case, State v. Sims, supra, the opinion which I wrote, was decided on January 14, 1952. Subsequently the Legislature clarified all doubt as to its intention by passing Act 368 of 1952, which is under consideration in this case. That Act declares:

"Criminal neglect of family is the desertion or intentional non-support:

\*     \*     \*     \*     \*     \*

"(2) By either parent of his minor child, *whether legitimate or illegitimate*, who is in destitute or necessitous circumstances, *there being a duty established by this article for either parent to support his child. The parent shall have this duty without regard to his reasons and irrespective of the causes of his living separate from the other parent. The duty established by this article shall apply retrospectively to children, legitimate or illegitimate, born prior to the effective date of this article"*. (Italics mine.)

Could anything be clearer? Here, the lawmaker has expressly spelled out, for the guidance of the courts, its aim to make the desertion or intentional nonsupport by a parent of his illegitimate child, whether he be acknowledged or not, a criminal offense. And, in order to insure against any possibility of a misunderstanding of its purpose, it has specifically imposed an obligation upon all such parents to provide for those children.

The majority opinion neither cites nor discusses this very important change in the statute but, instead, bases its conclusion on what I believe to be an erroneous interpretation of the provision following the one above quoted, which reads:

"In the case of an illegitimate child, evidence may be introduced in the proceedings hereunder to prove paternity or maternity. This proof shall be made in accordance with the rules estab-

lished by the Revised Civil Code of 1870, as amended, as *for proof of paternity or maternity for civil purposes.* Such proof, however, shall be used solely as the basis for the duty to support an illegitimate child established by this article and shall not be construed as establishing any civil obligation." (Italics mine.)

Obviously, this provision pertains solely to the type of proof which may be administered for the purpose of establishing paternity or maternity and has nothing to do, as the majority would construe it, with the criminal responsibility imposed upon the parent by the statute for his desertion or intentional nonsupport of his illegitimate child. The provision declares in plain terms that the proof in prosecutions under the Act shall conform to the rules established by the LSA–Civil Code for proof of paternity and maternity for civil purposes. These rules are set forth in Articles 208, 209, 210, 211 and 212 of the Civil Code. Articles 209 and 210 are applicable in this case because they deal with the methods of proving paternal descent.

Article 209 provides, in substance, that paternity can be shown either by the private writings in which the father "may have acknowledged the bastard as his child" or when he has referred to him as his child in conversation or has caused him to be educated as such or in instances where the mother, living in concubinage with the father, resided in his house when the child was conceived.

Article 210 declares that paternity may be proved by the oath of the mother, when supported by proof of her cohabitation with the reputed father, providing she is not known to be a woman of dissolute manners or one having had unlawful connection with one or more men either before or since the birth of the child.[1]

In the case at bar, the majority opinion does not conclude that the State has failed to establish the paternity of the defendant in accordance with the above-quoted articles. Conversely, it proceeds to apply Article 242 of the LSA–Civil Code to the case. That article, which prescribes the proof required by an illegitimate in order to sue for alimony in a civil action, is without pertinence here for the simple reason that the 1952 statute does not say that the proof of paternity is dependent upon whether the illegitimate child has a civil action against the parent for alimony; it imposes a duty of support in express terms. It merely employs the articles of the LSA–Civil Code in providing the method by which paternity or maternity is to be established.

Much reliance is also placed by the majority upon the per curiam of one of the judges of the Juvenile Court in the case of State v. Holmes, No. 41,076 of our docket,

[1]. For a comprehensive discussion of the methods of proving paternity, see Rousseau v. Bartell, La., 70 So.2d 394.

in which remedial writs were refused by four members of this court, to which ruling I did not subscribe. The per curiam, which is quoted in the main opinion, does not attempt to analyze Act 368 of 1952 and, as I read it, adds nothing to sustain the majority view.

I respectfully dissent.