81 So.2d 844

STATE of Louisiana

v.

John HUBBARD.

No. 42146.

June 30, 1955.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Leon D. Hubert, Jr., Dist. Atty., George M. McCulloch, Alexander E. Ralston, Jr., Asst. Dist. Attys., New Orleans, for appellant.

Joseph A. Barreca, New Orleans, for appellee.

FOURNET, Chief Justice.

It appears that the New Orleans Department of Public Welfare having caused to be filed a bill of information charging the defendant here, "John Hubbard, (C)" with criminal neglect of family in that he did "unlawfully and without just cause desert and wilfully neglect to provide for the support of his child Thomas, * * * [who] was and now is in destitute and necessitous circumstances * * *," the defendant secured the following information through his motion for a bill of particulars: that the child's full name is Thomas Freeman, that the mother of the child, Fannie Mae Freeman, was never married to the defendant, and that the child was not acknowledged by registry at birth or baptism, nor by a declaration executed before a notary public in the presence of two witnesses, and that there has never been a judgment of court declaring defendant to be the father of the child nor civil liability imposed upon the defendant to support him; the defendant then filed a motion to quash the information, based on the ground that (1) there exists no civil obligation upon the defendant to support the subject child, (2) the Juvenile Court for the Parish of Orleans is without jurisdiction to establish the paternity of the subject child. The Assistant District Attorney, contending that this motion to quash was premature, sought to introduce evidence to establish proof of paternity of the child named in the bill of information, but the learned judge of the Juvenile Court for the Parish of Orleans, being of the opinion that the Court was without jurisdiction to establish the paternity of the subject child, maintained the motion to quash. This appeal followed our refusal to grant writs of mandamus, prohibition and certiorari.

The people, through their legally constituted representatives, in adopting the Constitution of 1921 created the Juvenile Court

for the Parish of Orleans,[1] "which shall have jurisdiction, except for capital crimes, of the trial of all children under seventeen years of age who may be charged in said court as neglected or delinquent children, and of all persons charged with contributing to the neglect or delinquency of children under seventeen years of age, the violation of any law, now in existence or hereafter enacted for the protection of the physical, moral and mental well-being of children not punishable by death or hard labor. Said court shall also have jurisdiction of all cases of desertion or non-support of children by either parent, or of wives by their husbands. * * *" This provision has been amended several times, notably in the year 1938,[2] to give jurisdiction to the Juvenile Court for the Parish of Orleans "also of the adoption of children under seventeen years of age", but for purposes of decision in this case the amendments are not pertinent.

Article 74 of the Louisiana Criminal Code[3] originally provided simply that "Criminal neglect of family is the desertion or intentional non-support: (1) By a husband of his wife who is in destitute or necessitous circumstances, or (2) By either parent of his minor child who is in destitute or necessitous circumstances." The Legislature of 1950, by its adoption of Act 164, extended the offense of criminal neglect of family to include desertion and intentional nonsupport of illegitimate children.[4] Subsequent to the decisions of this Court in the cases of State v. Randall, 219 La. 578, 53 So.2d 689; State v. Jones, 220 La. 381, 56 So.2d 724, and State v. Sims, 220 La. 532, 57 So.2d 177, holding, in effect, that in the absence of a civil obligation to support the subject child there could not be criminal neglect of family, the Legislature further amended LSA–R.S. 14:74 by its Act 368 of 1952, in an effort

1. Louisiana Constitution of 1921, Const. LSA, Article 7, Section 96.

2. Act 390 of 1938, adopted as a constitutional amendment on November 8th of that year.

3. The Louisiana Criminal Code, being Act 43 of 1942, was incorporated in the Revised Statutes of 1950 under Title 14; Article 74 of the Criminal Code, merely a codification of previously existing law, is now LSA–R.S. 14:74.

4. There was no amendment to subdivision (1); subdivision (2) was amended to read:

"(2) By either parent of his minor child, whether legitimate or illegitimate, who is in destitute or necessitous circumstances. Solely for the purpose of

determining the obligation to support, the court shall admit proof of paternity or maternity, or both.

"Whenever a husband shall have left his wife in destitute or necessitous circumstances and has not provided her with means of support within sixty days thereafter, his failure to so provide shall be presumptive evidence that at the time of leaving he intended desertion and nonsupport. When either parent shall have left his minor child, whether legitimate or illegitimate, in destitute or necessitous circumstances and has not provided support within sixty days thereafter, his failure to so provide shall be presumptive evidence that at the time of leaving he intended desertion and non-support."

to create in the statute itself the duty to support such children.[5] After the refusal of this Court to review the judgment of the Juvenile Court for the Parish of Orleans dismissing the proceedings in the case of State v. Holmes, and our decision in the case of State v. Mack, 224 La. 886, 71 So.2d 315, holding, in effect, that the amendment of 1952 had not changed the rule of the prior decisions, the Legislature in 1954 again amended the statute by declaring that the provisions of Article 242 of the LSA–Civil Code do not apply to any proceeding brought under R.S. 14:74.[6]

The learned judge of the Juvenile Court, in a well-reasoned Per Curiam maintaining the motion to quash, took cognizance of the limited jurisdiction granted his Court un-

der the Constitution, and held that the Juvenile Court for the Parish of Orleans was without authority to entertain a case to establish the paternity of the subject child and fix responsibility for his support, and concluded that such responsibility must exist prior to any attempt to enforce the responsibility for such support, observing: "In the instant case, paternity of the child, Thomas, was never established, so that at the time this charge of nonsupport was filed against the defendant, John Hubbard, there was no established relationship of parent and child. Until such relationship is established, there can be no obligation to support, and without such obligation, this Court is without authority to enforce the responsibility which this criminal stat-

5. The amendment was again to subdivision (2), and provided that it should read:
"(2) By either parent of his minor child, whether legitimate or illegitimate, who is in destitute or necessitous circumstances, there being a duty established by this article for either parent to support his child. The parent shall have this duty without regard to his reasons and irrespective of the causes of his living separate from the other parent. The duty established by this article shall apply retrospectively to all children, legitimate or illegitimate, born prior to the effective date of this article.
"In the case of an illegitimate child, evidence may be introduced in the proceedings hereunder to prove paternity or maternity. This proof shall be made in accordance with the rules established by the Revised Civil Code of 1870, as amended, as for proof of paternity or maternity for civil purposes. Such proof, however, shall be used solely as the basis for the duty to support an illegitimate child established by this arti-

cle, and shall not be construed as establishing any civil obligation. * * *"

6. The 1954 amendment added a new section, to be designated as LSA–R.S. 14:-74.1, and to read as follows: "Sec. 74.1 Right of action. The provisions of Art. 242 of the Louisiana Revised Civil Code of 1870 shall not apply to any proceeding brought under the provisions of R.S. 14:74." Act No. 298 of 1954.
Article 242 of the LSA–Civil Code of Louisiana provides: "But in order that they [illegitimate children] may have a right to sue for this alimony, they must:
"1. Have been legally acknowledged by both their father and mother, or by either of them from whom they claim alimony; or they must have been declared to be their children by a judgment duly pronounced, in cases in which they may be admitted to prove their paternal or maternal descent;
"2. They must prove in a satisfactory manner that they stand absolutely in need of such alimony for their support."

ute seeks to place on unlawful fathers. * * *"

■ With the exception of the amendment of 1938 giving jurisdiction to the Juvenile Court for the Parish of Orleans of adoption proceedings, the article of the Constitution as originally enacted, and the several amendments thereto, clearly show that the Court has no jurisdiction over civil matters; its jurisdiction is limited exclusively to the trial of cases, except capital crimes, involving children under seventeen years of age charged as neglected or delinquent, and persons contributing to their delinquency, as well as of cases charging parents with desertion or nonsupport of their children or husbands of their wives. Of necessity, the Juvenile Court for the Parish of Orleans is without power or authority to entertain any action to establish the paternity of an illegitimate child; that function has been well recognized in all of the jurisprudence on the subject to be a civil function, exclusive jurisdiction thereof being vested in the Civil District Court for the Parish of Orleans. Art. 7, § 81, La.Const. of 1921. This was accentuated in the comparatively recent case of State v. Sims, supra, wherein we said [220 La. 532, 57 So.2d 178]: *"unless a civil obligation had been previously imposed upon the alleged father of the illegitimate child, criminal responsibility could not ensue."* We approved this ruling when we denied the application for writs to the ruling of the judge of the Juvenile Court

for the Parish of Orleans in the case of State v. Holmes (No. 41076 on the Docket of this Court) refusing to convict the defendant Holmes on the charge of criminal neglect of two minor children. In his written reasons for his ruling the judge stated that this Court in the Sims case had "clearly outlined the only procedure possible under the law for establishing the paternity of illegitimate children," the Court observing further "The Louisiana Supreme Court did not question the right of illegitimate children to secure support under this statute [R.S. 14:74] but denied the right of said children to prove their paternity * * * unless proof was first made in accordance with the rules established by the Civil Code of 1870." And even after the Legislature of 1952 sought to overrule these decisions by adopting Act 368, and to create in the statute itself a duty to support the child, in the case of State v. Mack, 224 La. 886, 71 So.2d 315, 316, we adhered to our previous conclusions, holding "that in order to obtain a conviction there must be established the existence of a civil obligation to support, * * *." The fact that the Legislature in the year 1954 adopted its Act No. 298, declaring that "The provisions of Art. 242 of the Louisiana Revised Civil Code of 1870 shall not apply to any proceeding brought under the provisions of R.S. 14:74" has not served to change the situation.

■ This conclusion is not only sound, and consonant with the canons of construc-

tion, but is in keeping with the jurisprudence. It would be illogical and unsound to hold otherwise and, we think, might well lead to injustice, oppression, and absurd consequences. We think it would be most illogical to convict the defendant of neglect of family, which of necessity required him to be decreed to be the father of such illegitimate child who, under our substantive law, belongs to no family, and simultaneously hold that the defendant deserted a child who had never been under his custody, and intentionally failed to support a child when theretofore there had been no such liability established.

To further illustrate the absurdity a contrary view could bring about, we might consider the defendant Shep Randall in our comparatively recent decision in the case of State v. Randall, 219 La. 578, 53 So.2d 689, 691, where we reversed the judgment of the Juvenile Court for the Parish of East Baton Rouge convicting Randall for criminal neglect of family in that he intentionally neglected and failed to support the two year old child born to a woman then married to another man from whom she was not divorced, the basis of our ruling being that according to the Revised Civil Code the husband of the mother, in the absence of timely disavowal proceedings by him or his heirs, is conclusively presumed to be the father of the child born during the marriage. To accept literally the enactment of the Legislature might bring about the very situation cautioned against in that opinion when we said "An unqualified destruction of the established conclusive presumption * * * might lead to injustice, oppression and absurd consequences. The wife in non-support cases (if not in all cases involving the paternity of the child born during her marriage) would carry the burden of proving that her husband is the actual father of her child."

For the reasons assigned, the judgment of the Juvenile Court for the Parish of Orleans is affirmed.

McCALEB, Justice (dissenting).

Ever since 1950, when Act 164 of that year was passed, the Legislature has been attempting to make it a criminal offense for a parent to wilfully neglect or intentionally fail to support his illegitimate child in destitute circumstances. In State v. Jones, 220 La. 381, 56 So.2d 724 and State v. Sims, 220 La. 532, 57 So.2d 177, this court concluded that the statute was applicable only to cases in which there is a civil obligation placed upon parents to provide support for their illegitimate children, forasmuch as it would be unreasonable to believe that the Legislature intended to render an act or course of conduct criminal for which no civil responsibility had been imposed. Those decisions were founded on an interpretation of legislative intent, a proper judicial function whenever a law is of doubtful meaning.

Soon after the decision in the Sims case, the Legislature met again and eliminated any uncertainty which may have existed as to its design in rendering parents of illegitimate children criminally responsible for their wilful failure to provide support—for, in Act 368 of 1952, it was provided that it is the duty of such parent to provide support for his child. I thought that the clear expression of the legislative will, as announced in that statute, ended further judicial inquiry as to the conduct which was made criminal and that the only real matters thereafter left for judicial determination in these proceedings were questions of fact, i. e., parenthood of the defendant and his intentional non-support of his child in necessitous circumstances. However, a majority of the court, in State v. Mack, 224 La. 886, 71 So.2d 315, reached the conclusion that the 1952 change in the statute accomplished naught because Article 242 of the Civil Code was pertinent to the case and that the parent could only become criminally responsible when his parenthood had been established by civil judgment or by acknowledgment.

Following the finality of the decision in State v. Mack, the Legislature of 1954 endeavored to overcome the judicial objections stated therein and, in Act 298 of 1954, it was specially provided that Article 242 of the Civil Code was not to be applied in proceedings brought under the statute.

The instant case ensues from this last legislative effort and the majority approve the finding of the trial judge that the Juvenile Court is without jurisdiction because the authority to enforce responsibility of support of illegitimate children resides exclusively in the Civil District Courts and that, until the obligation to support is first established in such courts, the Juvenile Court may not inquire into the matter of criminal responsibility.

It occurs to me that this resolution emanates from an erroneous assimilation of the matter of jurisdiction with that of proof. It is perfectly apparent that the grant of jurisdiction in Section 96 of Article 7 of the Constitution to the Juvenile Court for the Parish of Orleans " * * * of all cases of desertion or non-support of children by either parent, * * * " broadly covers desertion or non-support of illegitimate as well as legitimate children—for, had the Legislature intended to exclude the Juvenile Court's jurisdiction over cases involving illegitimate children, such intention would undoubtedly have been specifically expressed.[1] This being so, the question of the judge's authority to entertain this case is truly not a jurisdictional question at all and the majority ruling that the Juvenile Court has no authority to pass upon the criminal responsibility of the defendant herein, because his liability for the support of his illegitimate child must first be estab-

1. Under Article 178 of the Civil Code children are classified as either legitimate, illegitimate or legitimated and Article 240 provides that fathers and mothers owe alimony to their illegitimate children when they are in need.

lished in a civil suit, is actually the determination of a question of evidence, i. e., that parenthood of an illegitimate child can only be established by proof that such parenthood was judicially recognized by a civil judgment or acknowledgment, as provided by Article 203 of the Civil Code.

When the basis of the prevailing opinion is thus examined, it becomes manifest that the court is not ruling on a question of jurisdiction but enunciating rules of evidence which are not authorized by the statute.[2] The end result is that the legislative amendments have been unavailing and that the statute is no greater in its scope than when originally enacted. I think that these amendments should be given effect.

I respectfully dissent.

HAMITER, Justice (dissenting).

In his motion to quash, which the Juvenile Court of Orleans Parish sustained, the defendant contended that: (1) The court is without jurisdiction to establish the paternity of the illegitimate child and (2) there exists no civil obligation upon the defendant to support such child.

In my opinion the Juvenile Court for the Parish of Orleans has jurisdiction of the entire prosecution. Section 96 of Article VII of the Louisiana Constitution states

that the named court "shall also have jurisdiction of all cases of desertion or non-support of children by either parent * *." And in State v. Galjour, 215 La. 553, 41 So.2d 215 we held that such jurisdiction extended to a criminal prosecution for non-support of children brought under LSA–R.S. 14:74, an offense like that with which this defendant is charged.

Of course, in the Galjour case the children apparently were legitimate, whereas here the subject child is illegitimate. However, that is immaterial for the purpose of this decision, for investing jurisdiction in the Juvenile Court of "all cases of * * non-support of children by either parent" our Constitution makes no distinction between the mentioned two types. Besides, in prosecutions of this nature the matter of establishing the paternity of a neglected child (whether legitimate or illegitimate), including the duty of the state to prove such relationship and the method to be employed in so doing, gives rise merely to a question of proof, not one of jurisdiction.

Under the other contention urged in the motion to quash it is argued that to obtain a conviction under LSA–R.S. 14:74 there must be established the prior existence of a civil obligation to support the illegitimate child; and, in substantiation of the argu-

2. R.S. 14:74, in providing for proof to be administered in these cases, declares that it shall be made in accordance with the rules established by the Civil Code (see Articles 209, 210, 211 and 212) "as for proof of paternity or maternity for civil purposes" but that such proof is employable only for the purpose of establishing the duty to support an illegitimate child and shall not be construed as creating a civil obligation.

ment, defense counsel relies primarily on State v. Mack, 224 La. 886, 71 So.2d 315.

The defendant in the Mack case had been charged under LSA–R.S. 14:74, as amended and reenacted by Act 368 of 1952, the pertinent portions of which read:

"§ 74.   Criminal neglect of family

"Criminal neglect of family is the desertion or intentional non-support:

\*     \*     \*     \*     \*     \*

"(2) By either parent of his minor child, whether legitimate or illegitimate, who is in destitute or necessitous circumstances, there being a duty established by this article for either parent to support his child. The parent shall have this duty without regard to his reasons and irrespective of the causes of his living separate from the other parent.   The duty established by this· article shall apply retrospectively to all children, legitimate or illegitimate, born prior to the effective date of this article.

"In the case of an illegitimate child, evidence may be introduced in the proceedings hereunder to prove paternity or maternity. This proof shall be made in accordance with the rules established by the Revised Civil Code of 1870, as amended, as for proof of paternity or maternity for civil purposes.   Such proof, however, shall be used solely as the basis for the duty to support an illegitimate child established by this article, and shall not be construed as establishing any civil obligation."

In ordering the charge dismissed against the defendant in that case (Wilton Mack) a majority of the members of this court (not including the present writer who dissented) reaffirmed the decisions in State v. Jones, 220 La. 381, 56 So.2d 724, and State v. Sims, 220 La. 532, 57 So.2d 177, and held that a prerequisite for conviction under such statute, as amended in 1952, was prior proof of paternity (it had not been made) by legal acknowledgment or civil judgment in accordance with the rules established by the Revised Civil Code of 1870 to which reference was made in the statutory provisions.   The codal article particularly referred to by the majority, and which deals specifically with the mentioned two methods of proof, is No. 242.   It recites:

"But in order that they [illegitimate children] may have a right to sue for this alimony, they must:

"1.   Have been legally acknowledged by both their father and mother, or by either of them from whom they claim alimony; or they must have been declared to be their children by a judgment duly pronounced, in cases in which they may be admitted to prove their paternal or maternal descent;

"2.   They must prove in a satisfactory manner that they stand absolutely in need of such alimony for their support." (Brackets mine.)

However, subsequent to the decision in the Mack case the Legislature enacted Act

298 of 1954 which added to LSA–R.S. 14:74 a new section, it being numbered 74.1 and reading: "The provisions of Art. 242 of the Louisiana Revised Civil Code of 1870 shall not apply to any proceeding brought under the provisions of R.S. 14:74."

By such unequivocal declaration, following the decision of the Mack case which was predicated primarily on LSA–Civil Code Article 242, the Legislature manifested a clear intention that for convictions under LSA–R.S. 14:74 prior proof of paternity by legal acknowledgment or civil judgment is not a prerequisite; but that, as is recited in the statute, "In the case of an illegitimate child, evidence may be introduced in the proceedings hereunder to prove paternity or maternity." In other words the 1954 amendment had the same effect, and it served the same purpose, as would have been accomplished by a declaration of the Legislature that: "In cases of criminal non-support of illegitimate children, it shall not be necessary to show that paternity was previously established by acknowledgment or a judgment, but such paternity may be established in the Juvenile Court."

I respectfully dissent.

HAWTHORNE, Justice (dissenting).

In the instant case the defendant is charged under Article 74 of the Louisiana Criminal Code, R.S. 14:74, with having unlawfully, wilfully, and without just cause neglected to provide for the support of his minor child.

Our Constitution in Article VII, Section 96, provides that the Juvenile Court for the Parish of Orleans " * * * shall also have jurisdiction of all cases of desertion or non-support of children by either parent * * *". To my mind this constitutional provision is plain, and its meaning is clear. It means exactly what it says: That the Juvenile Court shall have jurisdiction of all cases of non-support of children by either parent. I then ask: What is an illegitimate child if he is not a child? Certainly no distinction is drawn in the provision of the Constitution between a legitimate and an illegitimate child. The majority here, however, is rewriting the constitutional provision to mean that the Juvenile Court for the Parish of Orleans shall have jurisdiction of all cases of non-support of legitimate children by either parent, and of non-support of illegitimate children by either parent only when the relationship of parent and child shall have been first established in some other court.

The majority opinion says: " * * * Of necessity, the Juvenile Court for the Parish of Orleans is without power or authority to entertain any action to establish the paternity of an illegitimate child * *." The majority is proceeding from an incorrect premise. This is not an "action to establish the paternity of an illegitimate child". It is a criminal proceeding, brought by the State under R.S. 14:74, to try the defendant for the offense of non-support of

his minor child. The question of whether he is the parent of that child is only a question of proof of one of the elements of the offense charged, and this question of proof or evidence has absolutely nothing to do with the question of jurisdiction.

The Legislature has attempted on three different occasions to make the offense denounced by the statute here under consideration a crime. See Act 164 of 1950, Act 368 of 1952, and Act 298 of 1954, all amending Article 74 of the Criminal Code. The majority of this court rendered the 1950 and 1952 acts ineffective insofar as unacknowledged illegitimate children are concerned. See State v. Jones, 220 La. 381, 56 So.2d 724; State v. Sims, 220 La. 532, 57 So.2d 177; State v. Love, 220 La. 562, 57 So.2d 187; State v. Mack, 224 La. 886, 71 So.2d 315. The 1954 act is now meeting the same fate under the decision of the majority in the instant case.

I respectfully dissent.