648 So.2d 1302 (1995)
Rosetta PACE
v.
STATE of Louisiana, Through LOUISIANA STATE EMPLOYEES RETIREMENT SYSTEM.
No. 94-CA-1027.
Supreme Court of Louisiana.
January 17, 1995.
*1304 John Asley Moore, George K. Johnson, Baton Rouge, for applicant.
Corbett L. Ourso, Jr., Hammond, for defendant.
DENNIS, Justice.[*]
Under the Louisiana State Employees Retirement System law, an illegitimate child of a male member of the system must obtain a judgment of paternity or filiation during the lifetime of such male member in order to receive survivors' benefits from the system. By contrast, unmarried legitimate children of members and unmarried illegitimate children of female members are eligible to receive survivors' benefits until the age of eighteen years, or twenty-three years if they are students. We are called upon to decide whether this statutory classification is a law that discriminates against a person because of birth in violation of Article I, § 3 of the 1974 Louisiana Constitution.
In order to qualify for survivors' benefits from the Louisiana State Employees Retirement System (Lasers, Inc.) the child of a member of the system must be a "minor child" as defined by La.R.S. 42:543(19). In February, 1984, at the time of the death of Edward Toefield, the police officer member who was the father of the illegitimate children claimants in the present case, La.R.S. 42:543(19) provided as follows:
`Minor Child' means an unmarried child under the age of eighteen years or an unmarried student under the age of twenty-three years who is the issue of a marriage of a member of this system, the legally adopted child of a member of this system, the natural child of a female member of this system, or the child of a male member of this system if a court of competent jurisdiction has, during the lifetime of such male member, made an order of filiation declaring the paternity of such member for the child.[1]
In February of 1984, Edward Toefield, a police officer with the Tangipahoa Parish Sheriff's Office, was killed in the line of duty. Toefield was married to Emma Toefield and had one child by this marriage. Survivors' benefits were paid by Lasers, Inc. to their child. Rosette Pace, who was never married to Toefield, also applied for survivors' benefits, claiming that Toefield was the father of her two children. This claim was denied by Lasers, Inc. because the children had not obtained an order of filiation during the lifetime of their father as required by the statutory scheme as it existed in 1984.
On July 5, 1988, Pace, as natural tutrix and on behalf of her two children filed suit claiming that they were entitled to past and future survivors' benefits. In response, Lasers filed a peremptory exception of prescription, arguing that since it was too late for Pace's children to obtain an order of filiation under the act, their suit for survivors' benefits had prescribed. The trial court agreed and dismissed plaintiff's action with prejudice.
On appeal, the Court of Appeal reversed the trial court, reasoning that since no time limit for claiming survivor's benefits is provided for in the act, La.Civ.Code art. 3499 supplies the ten year prescriptive period for claiming survivors' benefits. 569 So.2d 129. The court was careful to distinguish between *1305 the action for claiming survivors' benefits and the action in filiation necessary to qualify illegitimates as eligible beneficiaries under the act.
On remand, the trial court granted plaintiff's motion for summary judgment, ruling that the children were born out of wedlock to Toefield and Pace while Toefield was still married to his wife. The trial court then found there to be no reason substantially related to a permissible state interest to support the distinction in the statute between legitimate and illegitimate children. Accordingly, judgment was rendered in favor of plaintiff declaring La.R.S. 42:543(19) as it existed in 1984 to be unconstitutional and ordering Lasers to pay Pace's two children survivor's benefits.
As the Court of Appeal correctly noted, the legislation which establishes the Retirement System does not provide for any particular prescriptive period for claiming benefits. However, this was not an oversight as other provisions within the act make clear that as long as there exists an eligible member or beneficiary under the plan, they remain entitled to benefits. Accordingly, the extinguishment of claims under the act is determined by the respective definitions of the eligible beneficiaries.
This case involves one specific definition, that of a "minor child". The Retirement System statutory scheme declares that survivors' benefits shall be paid to the minor children of a member of the system. La.R.S. 42:602; La.R.S. 42:604. La.R.S. 42:543(19) defines a "minor child" as an unmarried child under the age of 18 (or an unmarried student under the age of 23). However, the definition excludes an illegitimate child from this eligible class unless he or she obtains an order of filiation during the lifetime of the father. Pace contends that the classification violates her children's rights to equal protection of the laws.
Article I, § 3 of the Louisiana Constitution provides that:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for a crime.
Article I, § 3 requires the courts to apply different types of equal protection analyses to different types of legislative classifications of individuals. At a minimum, every statutory classification of individuals must be rationally related to a legitimate governmental purpose. Consequently, whenever a person disadvantaged by such a statutory classification shows that it does not suitably further any appropriate state interest, the courts must decline to enforce that classification. Crier v. Whitecloud, 496 So.2d 305 (La.1986); Whitnell v. Menville, 540 So.2d 304 (La. 1989); Kirk v. State, 526 So.2d 223 (La.1988). At the other extreme, when a law classifies persons by race or religious ideas, beliefs, or affiliations, it must be repudiated completely. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985) (on rehearing). Between these extremes, Article I, § 3 designates certain types of legislative classifications that cannot be used to arbitrarily, capriciously, or unreasonably discriminate against a person. When a statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, it is presumed to deny the equal protection of the laws and to be unconstitutional unless the state or other advocate of the classification shows that the classification substantially furthers an important governmental objective. Id. This intermediate type of analysis was not fully articulated in this court's interpretation of Article I, § 3 until its decision in Sibley, supra. Nevertheless, all of this court's decisions that have carefully examined such legislative classifications of persons are consistent with this form of intermediate standard of review.
A law that treats illegitimate children less favorably than legitimate ones discriminates between them because of birth and is unconstitutional unless the state carries its burden of showing that the classification substantially furthers a legitimate state purpose. *1306 Accordingly, we have considered on several occasions during the past twenty years the constitutional validity of statutory classifications based on illegitimacy. When the state or other exponent of the classification failed to demonstrate that it substantially furthers the particular state interest the statute is designed to serve, it has been declared unconstitutional. See, e.g., Talley v. Succession of Stuckey, 614 So.2d 55 (La.1993) (striking down Civil Code article which did not provide for the revocation of a testament by the subsequent birth of an illegitimate child whose filiation to the testator parent had been established in the manner provided by law); Succession of Bartie, 472 So.2d 578 (La.1985) (striking down provisions of forced heirship laws which excluded illegitimate children); Jordan v. Cosey, 434 So.2d 386 (La.1983) (striking down Civil Code article which limited amount of a donation by a father to an illegitimate child to one-fourth of the father's property if the father was survived by legitimate descendants or siblings); Succession of Brown, 388 So.2d 1151 (La. 1980), cert. denied sub nom. Brown v. Brown, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981) (striking down Civil Code article which provided that acknowledged illegitimates could not come to intestate successions if the deceased parent was survived by legitimate descendants); Succession of Thompson, 367 So.2d 796 (La.1979) (striking down Civil Code article which excluded illegitimate children from receiving the mother's legacy if legitimate children existed). On the other hand, when the state carried its burden of showing that the classification substantially furthered an important governmental objective, it has been upheld. Succession of Grice, 462 So.2d 131 (La.1985) (statutory provision requiring that filiation action be filed within one year of child's majority held to substantially further the state's important interest in providing for the just and orderly disposition of a decedent's property at death where paternal inheritance is concerned).
The United States Supreme Court uses a similar intermediate standard of review in analyzing legislative classifications challenged as denying the equal protection of the laws. The governmental use of a classification that is based on the status of a person having been "legitimate" or "illegitimate" at birth will be upheld only if the classification is substantially related to an important government interest. Nowak and Rotunda, Treatise on Constitutional Law, § 18.14 (2d ed. 1992). This standard of scrutiny, which falls between the Supreme Court's rational relationship test and its strict scrutiny test in terms of the strictness of the judicial review of classification, was not formally adopted for illegitimacy classifications until 1988 in Clark v. Jeter, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). Nowak and Rotunda, supra. Nevertheless, the decisions of the Supreme Court pre-dating Louisiana's 1974 Constitution are consistent with this form of intermediate standard of review. See, e.g., Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). Accordingly, in interpreting and applying Article I, § 3 to illegitimacy classifications we consider the high court's cases as setting the minimum but not the determinative standards for our equal protection review under Article I, Section 3 of the state constitution. See State v. Hattaway, 621 So.2d 796 (La.1993); State v. Perry, 610 So.2d 746 (La.1992).
Upon closer examination of the United States Supreme Court cases involving equal protection actions by illegitimate children, distinct subcategories can be identified on the basis of the rights sought to be enforced. This is because the interests of the state, the illegitimate child, and the respective parents vary depending upon the context in which they are examined. For this reason, the Court, although still employing the same intermediate level of scrutiny, utilizes distinct analytical approaches depending upon the type of right sought to be enforced by the illegitimate child.
In the instant case, the survivors' benefits at issue have characteristics in common with the cases involving the rights of illegitimates in the areas of inheritance, governmental benefits, and child support. See, e.g., Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); Clark v. Jeter, 486 U.S. 456, 108 S.Ct. *1307 1910, 100 L.Ed.2d 465 (1988). Like inheritance, the claim to survivors' benefits does not arise until the death of the parent; like governmental benefits, the survivors' benefits are provided via a legislatively-created entity funded, in part, by employee contributions; and like child support, survivors' benefits seek to provide for the child's welfare and education during his or her minority.
However, statistics indicate that illegitimate children are usually in need. Krause, Child Support in America, pp. 115-17 (1981); Krause, Family Law in a Nutshell, § 11.6 (1986). Moreover, survivors' benefits are minimal and barely defray the essential living costs of minors. For these reasons, we will advert carefully to the Supreme Court's recent equal protection decisions concerning state child support laws.
Particularly suitable for application in the present case is the framework that the high court has developed for evaluating equal protection challenges to statutes of limitations that apply to suits to establish paternity, thereby limiting the ability of illegitimate children to obtain support. First, the limitation must allow for a reasonable opportunity for the child or those with an interest in the child to assert claims on the child's behalf. Second, any time limitation placed on that opportunity must be substantially related to the state's interest in avoiding the litigation of stale or fraudulent claims. Clark v. Jeter, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); Pickett v. Brown, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983); Mills v. Habluetzel, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982). Although the Supreme Court's earlier cases in this area focused on the precise length of time provided by the respective laws in question, the Court has now made it clear that the underlying crux of its inquiry was the reasonableness of the opportunity. This shift parallels the widespread and growing recognition of the fact that statutes of limitations are a crude and inefficient means to address the problem of stale claims. Clark, supra, 486 U.S. at 465, 108 S.Ct. at 1916; Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 312-14, 65 S.Ct. 1137, 1141-42, 89 L.Ed. 1628 (1945); Wells, Statutes of Limitations in Paternity Proceedings: Barring an "Illegitimate's" Right to Support, 32 Am.U.L.Rev. 567, 604-05 (1983).
Applying the foregoing precepts, as well as related concepts and considerations, we find that the classificatory statute that bars illegitimate children who have not judicially filiated prior to their natural father's death from receiving survivors' benefits under the state employees' retirement system does not present a reasonable opportunity for the assertion of their claims and does not substantially further the state's interest in avoiding the litigation of stale or fraudulent claims. Therefore, we conclude that this classification unconstitutionally denies such children equal protection of the laws under Article I, § 3.
The limitation provision of the state employees' retirement system law, which provides that illegitimate children seeking survivors' benefits because of their natural father's death must obtain a judicial decree of filiation during that parent's lifetime, does not afford illegitimate children an adequate opportunity to establish paternity. Because of the difficult personal, family, and financial circumstances that often surround the birth of a child out of wedlock, there are formidable practical obstacles to the filing of paternity suits during the father's lifetime.
The mother's ability to bring a filiation action will often be encumbered by the financial difficulties caused by childbirth expenses or a birth-related loss of income, continuing affection for the child's father, a desire to avoid disapproval of family and community, or the emotional strain and confusion that often attend the birth of an illegitimate child. See Mills v. Habluetzel, 456 U.S. 91, 100, 102 S.Ct. 1549, 1555, 71 L.Ed.2d 770 (1982). If, because of the continuing relationship between the natural father and the mother, the father has provided the child with financial support for several years, the mother understandably would be unlikely or even unwilling to jeopardize her relationship with the child's father by filing a paternity suit in order to protect her child's financial support at some indeterminate future date. Id. at 105, 102 S.Ct. at 1558. The possibility that the causes of this unwillingness to file suit, which may be exacerbated if the mother herself is a minor, may continue for years after the child *1308 is born, underscores that the mother's and the child's interests are not congruent. Id. at 105, n. 4, 102 S.Ct. at 1558, n. 4. See Wells, Statutes of Limitations in Paternity Proceedings: Barring an "Illegitimate's" Right to Support, 32 Am.U.L.Rev. 567, 593, n. 178 (1983), citing Poulin, Illegitimacy and Family Privacy: A Note on Maternal Cooperation in Paternity Suits, 70 NW.U.L.Rev. 910, 922-24 (1976).
Illegitimate children are even less able to file paternity suits against their fathers due to the incapacities of their youth. Children who are supported by their fathers are unlikely to bring paternity suits because they either are not likely to see the need for such adversary proceedings or, even if aware of the rule requiring judicial filiation orders, are likely to fear provoking disharmony by suing their fathers. Lalli v. Lalli, 439 U.S. 259, 278, 99 S.Ct. 518, 529, 58 L.Ed.2d 503 (1978) (Brennan, J., dissenting). These impediments to a child's lawsuit against the father to preserve the right to financial benefits at some indeterminate date seem as likely to exist throughout his minority as during the early years of his life. Mills v. Habluetzel, 456 U.S. 91, 106, 102 S.Ct. 1549, 1558, 71 L.Ed.2d 770 (1982) (O'Connor, J., concurring).
As the foregoing demonstrates, despite the fact that the law operates to allow either a child or a mother to bring a paternity action, there are myriad economic, societal, and personal pressures which operate to prevent such an action from being filed against a father who supports his illegitimate child. For these reasons, we find that the instant statutory scheme which requires that a judicial filiation order be obtained during the lifetime of the father does not provide a reasonable opportunity for the assertion of the rights of the illegitimate child.
Having found that the Retirement System's rule requiring an illegitimate child to filiate during the lifetime of the father does not provide a reasonable opportunity for the child to assert his or her rights, our focus now turns to the second prong of our inquiry, viz., whether the restriction placed on the assertion of the illegitimate child's rights substantially furthers the state's interests.
In past cases involving equal protection challenges to classifications based on illegitimacy, states have forwarded a variety of interests including, but not limited to, discouraging behavior viewed as immoral and protecting the family by conserving the family's patrimony. See, e.g., Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). However, these are not legitimate state interests since it is well-established that a state may not attempt to discourage immoral behavior of the parents by discriminating against the children of their union. Id. In the present case however, the state forwards other objectives to justify the different treatment of illegitimate children. In addition to the prevention of fraudulent or stale claims, the state argues that the statutory scheme in question also promotes the state's interest in the orderly disposition of property at death. Therefore, the statute must be examined to determine whether it substantially furthers either of these goals.
The state's interest in the orderly disposition of property at death is, as an abstract proposition, the more pressing of the two state interests identified. The United States Supreme Court has long recognized that this is an area with which the states have an interest of considerable magnitude. Lalli v. Lalli, 439 U.S. 259, 268, 99 S.Ct. 518, 524, 58 L.Ed.2d 503 (1978), citing Trimble v. Gordon, 430 U.S. 762, 771, 97 S.Ct. 1459, 1465, 52 L.Ed.2d 31 (1977), Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 170, 92 S.Ct. 1400, 1404, 31 L.Ed.2d 768 (1972), and Labine v. Vincent, 401 U.S. 532, 538, 91 S.Ct. 1017, 1020, 28 L.Ed.2d 288 (1971). This interest stems from the public need for finality in succession proceedings and stability in land titles and has served to justify temporal restrictions on the ability of illegitimates to inherit from their natural fathers. Succession of Grice, 462 So.2d 131 (La.1985). The Lalli court observed, however, that the presence in that case of the state's interest in the orderly disposition of a decedent's property at death distinguishes it from others in which that justification for an illegitimacy-based classification was absent. Lalli, supra, 439 U.S. at 268, n. 6, 99 S.Ct. at 524, n. 6, citing, e.g., Jimenez v. Weinberger, 417 U.S. 628, 94 *1309 S.Ct. 2496, 41 L.Ed.2d 363 (1974) (social security benefits); Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) (child support); Weber, supra (workmen's compensation benefits); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) (wrongful death recovery).
Survivors' benefits do not involve ownership of immovables and thus the state's interest in the stability of titles to land is not affected. Nor does the Retirement System have the same need for finality as do succession proceedings. This is due to the fact that the Retirement System sets forth, in advance, the maximum amount that the decedent's spouse and children are to receive. This amount remains static regardless of the number of beneficiaries and is paid continuously throughout the period of eligibility as set forth by the statutory scheme. In light of these distinctions, we find that the legitimate state interest in the orderly disposition of property at death, normally a paramount concern with paternal inheritance by illegitimate children, is not implicated by the instant statutory scheme.
Turning now to the second objective posited by the state, it is worthy to note that statutes of limitations have long been employed by the law to prevent the litigation of stale claims. These statutes are practical and pragmatic devices that spare citizens from having to defend claims after witnesses have died and memories have faded. Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945). By definition, such statutes are overbroad since they impose an arbitrary and formidable impediment to the enforcement of an illegitimate child's right to claim survivors' benefits without taking into account alternatives which deal directly with the problems of proof.
The relationship between statutes of limitations and the state's interest in preventing stale or fraudulent claims is more attenuated today than it has ever been. Pickett v. Brown, 462 U.S. 1, 17, 103 S.Ct. 2199, 2208, 76 L.Ed.2d 372 (1983). This is due to the fact that scientific advances in blood and genetic testing have alleviated the vast majority of the problems of proof that once plagued actions of this type. Id. at 17, 103 S.Ct. at 2208. Although these improvements have not totally accommodated the state's interests in the prevention of stale and fraudulent claims, the attenuation caused by scientific progress is certainly a large factor in determining whether a period of limitations substantially furthers the state's interests. Mills v. Habluetzel, 456 U.S. 91, 103-04, 102 S.Ct. 1549, 1556-57, 71 L.Ed.2d 770 (1982) (O'Connor, J., concurring).
As noted in the legislative history of the Federal Child Support Enforcement Amendments, the increasingly sophisticated tests for genetic markers permit the exclusion of over 99% of those who may be accused of paternity. Clark v. Jeter, 486 U.S. 456, 465 (1988), citing H.R.Rep. No. 98-527, U.S.Code Cong. & Admin.News 1984, p. 2397. Such precision may be available even after the putative father is deceased because DNA testing uses molecules that often remain stable and testable long after death. LeRay, Implications of DNA Technology on Posthumous Paternity Determination: Deciding the Facts When Daddy Can't Give His Opinion, 35 B.C.L.Rev. 764 (1994).
The advances in genetic testing have been recognized by courts across the nation. For example, Alexander v. Alexander, 42 Ohio Misc.2d 30, 537 N.E.2d 1310 (Probate Ct. Franklin Co.1988), took judicial notice of the accuracy of DNA testing. The court held that an illegitimate child may prove paternity by genetic testing and allowed disinterment of the putative father to conduct the test. The court stated that "the accuracy and infallibility of the DNA test are nothing short of remarkable," and proclaimed that the proof problems which had plagued paternity cases should no longer deprive an illegitimate child of the opportunity to prove paternity. Id., 537 N.E.2d at 1314. See also, Batcheldor v. Boyd, 108 N.C.App. 275, 423 S.E.2d 810 (1992) and In re Greenwood, 402 Pa.Super. 536, 587 A.2d 749 (1991). Additionally, courts have found that DNA tests performed on the deceased putative father's relatives can determine paternity posthumously. See, e.g., Tipps v. Metropolitan Life Ins. Co., 768 F.Supp. 577 (S.D.Tex.1991) and In re Estate of Rogers, 245 N.J.Super. 39, 583 A.2d 782 *1310 (App.Div.1990). The reasoning behind these cases is not foreign to our jurisprudence. For example, in Sudwischer v. Estate of Hoffpauir, 589 So.2d 474 (La.1991), the plaintiff brought a filiation action in order to establish her relationship to the decedent during the course of a succession proceeding. Relying on existing civil discovery rules, this court held that collateral parties could be ordered to submit to a blood test for DNA comparison purposes.
As the foregoing demonstrates, the progress in scientific technology has alleviated most of the difficulties of proof traditionally associated with paternity actions. Therefore, the state's interest in preventing fraudulent or stale claims could be served more effectively by adopting evidentiary procedures which do not operate to bar all posthumous paternity actions by illegitimate children.
Moreover, the strength of the asserted state interest in preventing the prosecution of stale or fraudulent claims is undercut by the countervailing state interest in ensuring that genuine claims for child support are satisfied. See La.R.S. 46:231, et seq.; See also Mills v. Habluetzel, 456 U.S. 91, 103, 102 S.Ct. 1549, 1556, 71 L.Ed.2d 770 (1982) (O'Connor, J., concurring); Little v. Streater, 452 U.S. 1, 13, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627 (1981); Salas v. Cortez, 24 Cal.3d 22, 154 Cal.Rptr. 529, 536, 593 P.2d 226, 233, cert. denied, 444 U.S. 900, 100 S.Ct. 209, 62 L.Ed.2d 136 (1979); Jane L. v. Rodney B., 108 Misc.2d 709, 438 N.Y.S.2d 726, 729 (Fam.Ct.1981). In fact, the state has a compelling interest in assuring that the primary obligation for support of illegitimate children falls on both natural parents rather than the taxpayers. Mills, supra, 456 U.S. at 103, n. 1, 102 S.Ct. at 1557, n. 1, citing Texas Dept. of Human Resources v. Delley, 581 S.W.2d 519, 522 (Tex.Civ.App.1979) and State v. Wood, 89 Wash.2d 97, 569 P.2d 1148, 1151 (1977); See also, Little, supra, 452 U.S. at 14, 101 S.Ct. at 2209; Jane L., supra. By making it difficult for illegitimate children to obtain survivors' benefits, the rule requiring them to filiate during their fathers' lives could only increase the burden on the state welfare system. See Middleton v. Luckenbach S.S. Co., 70 F.2d 326, 330 (2d Cir.), cert. denied, 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674 (1934); Salas, supra; Jane L., supra, 438 N.Y.S.2d at 728-9. Consequently, although the state has an interest in preventing the prosecution of stale or fraudulent claims, it also has a strong interest in ensuring that genuine claims for survivors' benefits are not denied. See, Mills, supra, 456 U.S. at 104, 102 S.Ct. at 1557; Little, supra, 452 U.S. at 14, 101 S.Ct. at 2209.
For all of these reasons, La.R.S. 42:543(19) deprives illegitimate children of an adequate opportunity to obtain survivors' benefits upon the death of their fathers by requiring that they establish paternity during the fathers' lifetime. Furthermore, the effect of this statutory scheme is to place encumbrances upon the illegitimate children's rights that do not substantially further the state's interest in avoiding the prosecution of stale or fraudulent claims. Accordingly, we conclude that the statutory rule requiring such illegitimate children to establish paternity prior to the father's death denies them the equal protection of laws guaranteed by Article I, § 3 of our state constitution. The judgment of the trial court declaring the statute unconstitutional in this respect is affirmed, and the case is remanded to that court for further proceedings consistent with this opinion.
AFFIRMED AND REMANDED TO THE TRIAL COURT.
NOTES
[*] Justice Pike Hall, Jr., retired, participating in the decision by assignment, the case having been argued prior to his retirement. Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994.

Pursuant to Rule IV, Part 2, § 3, Watson, J., is not on the panel which heard and decided this case.
[1] Since the time of Toefield's death, La.R.S. 42:543 was amended by Acts 1989, No. 76, section 1. The term "minor child" was redefined so as to allow illegitimate children to bring an action in filiation after the death of the alleged father. See La.R.S. 11:403 (West 1982).