883 So.2d 412 (2004)
Dianne TURNER, as Natural Tutrix of the Minor Child Cietra Jenal Stroughter (Onterio McWright)
v.
Thomas R. BUSBY and Zurich American Insurance Company.
No. 2003-C-3444.
Supreme Court of Louisiana.
September 9, 2004.
Rehearing Denied October 29, 2004.
*414 Bobby Ray Manning, for applicant.
Samuel Henry Thomas, James Edward Paxton, Tallulah, for respondent.
TRAYLOR, Justice.
We granted this writ application to determine whether Onterio McWright, the plaintiff, is a child of the decedent for the purposes of a wrongful death and survival action where McWright has no biological connection to the decedent, but decedent executed a formal acknowledgment of paternity. For the following reasons, we affirm the court of appeal and find that McWright is not a child who may recover damages under a wrongful death and survival claim.

FACTS AND PROCEDURAL HISTORY
On November 11, 1999, Andrew Stroughter ("Stroughter") was killed in a collision with a tractor trailer driven by Thomas Busby ("Busby"). Following the accident, multiple parties filed suit against Busby and his insurance carrier, Zurich American Insurance Company ("Zurich") for the wrongful death of Stroughter. The plaintiffs in this action include Alversia Stroughter, Stroughter's ex-wife; Onterio McWright, his formally acknowledged son; LeShun Singleton, his daughter; and Dianne Turner, Stroughter's girlfriend, as natural tutrix for their minor child, Cietra Jenal Stroughter. This appeal focuses specifically on McWright's claims.
McWright was born to Gladysteen Harris ("Harris") on June 8, 1970. Harris and Stroughter were never married. However, in child support proceedings on March 3, 1982, Stroughter signed a notarized stipulation that was made an order of the court under La.Rev.Stat. 14:75.2[1] wherein he agreed to pay child support. Stroughter subsequently stipulated that he was McWright's "lawful parent" in an order and judgment fixing child support entered in the Superior Court of the State of Washington, King County, on May 6, 1983, where he was cast in judgment for back child support. The March 1982 stipulation was amended on May 4, 1984, and Stroughter again signed another notarized stipulation and judgment admitting that he *415 was McWright's father and agreed to pay child support.
After this wrongful death and survival action ensued, the defendants filed an Exception of No Right of Action arguing that McWright was neither legitimate at birth, nor subsequently legitimized by Stroughter; therefore, McWright is not within the class of persons who may assert a wrongful death and survival action under La. Code Civ. Proc. arts. 2315.1 and 2315.2.[2] In addition, the defendants submitted and were granted a motion to have a DNA test performed on McWright to determine if Stroughter was in fact his father. The Court of Appeal, Second Circuit, denied writs on the showing made. McWright then submitted to the DNA testing which revealed a 0% probability that McWright was Stroughter's son. Thereafter, the trial court granted the defendant's Exception of No Right of Action, and McWright was dismissed from the lawsuit with prejudice.
On appeal, McWright asserted that, as a matter of law, the 1982, 1983, and 1984 final judgments fixing child support settled the issue of paternity. Consequently, any attack on the validity of the assertions in those judgments should have been made within one year of the discovery of the alleged defect or nullity under La.Code of Civ. Proc. art.2004. As a result, McWright argued that the defendants are preempted by operation of law from collaterally attacking that judgment in this wrongful death action. McWright also asserted that the defendants lack standing to attack the formal acknowledgments executed pursuant to the 1982 and 1984 criminal stipulations. On rehearing, the Court of Appeal, Second Circuit, affirmed, finding that the defendants had standing to contest the validity of the formal acknowledgments and that McWright could not recover wrongful death and survival damages because he is not Stroughter's child.
On the application of McWright, we granted certiorari to review the correctness of the lower courts' judgments granting the peremptory exception of no right of action. Turner v. Busby, 03-3444 (La.3/19/04), 869 So.2d 834.

DISCUSSION
The function of an exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. La.Code Civ. Proc. art. 927; Reese v. State, Dept. of Public Safety & Corrections, et al, 03-1615 (La.2/20/04), 866 So.2d 244, 247. In examining an exception of no right of action, a court should focus on whether the particular plaintiff has a right to bring the suit, but assume that the petition states a valid cause of action for some person. Id. The exception of no right of action questions whether the plaintiff in the particular case is a member of the class of persons that *416 has a legal interest in the subject matter of the litigation. Id.
To recover under a claim for wrongful death and survival, a plaintiff must fall within the class of persons designated as a beneficiary as prescribed by La. Civ.Code arts. 2315.1 and 2315.2. The primary category under both wrongful death and survival actions includes "children" of the decedent. Reese, 866 So.2d at 247.
McWright argues that a judgment of paternity existed between himself and Stroughter based on the 1982, 1983, and 1984 final judgments fixing child support. He asserts that the defendants cannot collaterally attack this final judgments twenty years later in this proceeding because they have not challenged the acknowledgment within the one-year peremptive period provided in La.Code Civ. Proc. art.2004.[3] We disagree, and find that Article 2004 is inapplicable to the instant case.
La.Code Civ. Proc. art.2004 provides for a one-year peremptive period for the annulment of a civil judgment obtained by fraud or ill practices. By contrast, La. Rev.Stat. 14:75.2, located in Title 14 which deals exclusively with criminal law, is criminal in nature. State v. Broussard, 490 So.2d 273 (La.1986). Moreover, the jurisprudence has held that a proceeding for criminal neglect of family must be converted into a paternity proceeding in order to establish a civil judgment of paternity. State v. Foss, 449 So.2d 159, 161 (La.App. 4 Cir.1984). The stipulation and the judgment are separate. State v. Braxton, 238 La. 13, 113 So.2d 292, 294 (1959). Thus, the jurisprudence and the subject matter of the statute establish that these judgments are criminal in nature, and do not constitute a civil paternity judgment.
Based on the jurisprudence and the subject matter of La.Rev.Stat. 14:72.5, this case clearly involves a stipulation made pursuant to a criminal statute. By its very nature, the prescriptive periods set forth in the Louisiana Code of Civil Procedure are inapplicable to the annulment of a stipulation made pursuant to a criminal statute. For these reasons, we find that La.Code Civ. Proc. art.2004 is inapplicable to the instant case.
Having established that the prescriptive periods set out in the Louisiana Code of Civil Procedure are inapplicable to a criminal judgment, we must next determine whether these judgments constitute final judgments as to these parties pursuant to other law. La.Rev.Stat. 13:4231 provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on an appeal or other direct review, to the following extent:
* * *
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
This statute adopts the principle of issue preclusion, which is designed to promote judicial economy by preventing relitigation of the same issue between the same parties. La.Rev.Stat. 13:4231, Comment (B).
In the instant case, the defendants were not parties to the criminal child support *417 proceeding, nor did the defendants have an opportunity to intervene in such an action at the time it arose. The defendants' interest in the plaintiff's claim arose when McWright filed suit for wrongful death and survival damages based on his claim that he is Stroughter's illegitimate child and named the defendants as parties therein. Therefore, the stipulation of paternity in the 1982, 1983, and 1984 judgments could not have conclusive effect between McWright and these particular defendants because the same parties are not attempting to relitigate the paternity issue.
McWright next argues that the defendants do not have standing to contest the formal acknowledgment executed by Stroughter pursuant to the child support proceedings. We disagree and find that the defendants have standing to contest McWright's claims as an illegitimate child pursuant to La. Civ.Code art. 207.
La. Civ.Code art. 207 states, "Every claim, set up by illegitimate children, may be contested by those who have any interest therein." In Succession of Robinson, 94-2229 (La.5/22/95), 654 So.2d 682, 685, this court clearly and unequivocally held that the right to challenge an acknowledgment is granted by La. Civ.Code art. 207. In Robinson, Hardie Robinson, Jr. formally acknowledged three children born to his wife during her previous marriage in a 1971 will executed before a notary public and two witnesses. In 1988, Robinson executed a new will without mention of his wife's daughters. After Robinson died in 1992, the acknowledged women intervened in the succession seeking to be recognized by the court as Robinson's children and thus be allowed to participate in the succession. When the administrator and forced heir, Melvin Robinson, subsequently sought DNA testing, the women claimed that the formal acknowledgment could not be attacked. This court found that Melvin Robinson, had standing under Article 207 to contest the formal acknowledgment and the women's claims to participate as forced heirs in the succession due to his own interest as administrator of the succession and as a forced heir.
Defendants herein also have an interest in contesting McWright's claim that he is entitled to recover under the wrongful death and survival actions as a child of the decedent. Here, McWright has filed a wrongful death and survival action alleging that he falls within the primary class of beneficiaries who may recover damages. The defendant insurance company and Busby, as potentially liable parties named in this lawsuit, have an interest in this suit based on McWright's claim that he is Stroughter's illegitimate child and thus falls within the primary class of beneficiaries who may recover under a wrongful death and survival action.
As the defendants argue, our holding is supported by jurisprudence which establishes the necessity of a biological connection between a child and the tort victim in wrongful death and survival actions. This court in Warren v. Richard, 296 So.2d 813, 817 (La.1974), determined that the critical requirement for classification of a person as a child in a wrongful death and survival action is the biological relationship between the tort victim and the child. In Warren, Iris Blackburns, the legitimate child of Albert Gray, alleged that she was entitled to wrongful death and survival damages for the death of her biological father, David Lee Blackburns. This court reversed the trial court and denied the defendants' exception of no right of action, reasoning that to find a child had no right to recover for her biological father's wrongful death because the law presumed her to be the legitimate child of another man would run counter to the Equal Protection Clause of the United States Constitution. *418 As the Warren court stated, "it is the biological relationship and dependency which is determinative of the child's rights in these cases, and not the classification into which the child is placed by the statutory law of the State." Id. Thus, it is imperative that we uphold the critical requirement that the tort victim and the child have a biological relationship.
McWright also attempts to construe the lower courts holdings as contrary to public policy because it "bastardizes" children. However, to contest a claim under Article 207, the child making the claim must be illegitimate. Children may either be legitimate, illegitimate, or legitimated. La. Civ.Code. arts. 178 and 181. La. Civ.Code art. 207, located in Chapter 3, Section 2, entitled "Of the Acknowledgment of Illegitimate Children," provides in pertinent part for the formal acknowledgment of illegitimate children:
A. The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in the presence of two witnesses, by the father and mother or either of them, or it may be made in the registering of the birth or baptism of such child.
Although Article 203 may serve as proof of paternity, it does not legitimate the child. Davenport v. Davenport, 116 La. 1009, 41 So. 240, 240-241 (1906). By contrast, a parent wishing to legitimize a child may do so by notarial act provided that the parent makes a declaration of his intent to legitimate the child. See, La. Civ.Code art. 200.
The record reveals that the 1982 and 1984 criminal stipulations conform with the requirement that a parent must execute a formal acknowledgment before a notary and two witnesses; but does not reveal an intent to legitimize McWright by notarial act. The 1982 and 1984 criminal stipulations executed in Madison Parish, Louisiana, contained identical language which reveals an absence of intent to legitimize McWright:
I agree to pay to the Department of Health and Human Resources the amount of ... for the support of the child born to me and Gladysteen Harris named herein as follows: Onterio J. McWright ...
Moreover, the 1983 judgment executed in King County, Washington stated that "[Stroughter] is the lawful parent of Onterio J. McWright ..." Although all three stipulations were executed before a notary and two witnesses, Stroughter did not declare his intention to make McWright his legitimate child. Without this declaration, the execution of the criminal stipulation did not legitimize McWright. Because McWright was not a legitimate child at the time this wrongful death and survival action commenced, but rather a formally acknowledged illegitimate child under Article 203, his claim as an illegitimate child may be subject to scrutiny provided the defendants have proved all other requirements of Article 207. Accordingly, we affirm the court of appeal and find that the defendants have standing to contest McWright's claim that he is Stroughter's illegitimate child.
McWright next asserts that the defendants have not used the appropriate procedural device to challenge a formal acknowledgment, asserting that the defendants must file an action to annul. We disagree.
We initially note that McWright is attempting to use a formal acknowledgment to prove that he is the illegitimate child of Stroughter for the purposes of the wrongful death and survival action. This court explained the effects of a formal acknowledgment in Rousseve v. Jones, 97-1149 (La.12/2/97), 704 So.2d 229, 232-233:

*419 An acknowledgment of an illegitimate child by authentic act effectively creates a presumption of biological parentage. Conversely, the acknowledgment is premised on a biological relationship, which is the reason for the acknowledgment. An authentic act of acknowledgment is a solemn statement by the acknowledger that he believes a child is his. The acknowledgment does not cause the child to be his; it merely acknowledges that he believes it is. When the acknowledged fact is ultimately untrue, the acknowledgment may be null, absent some overriding concern.
Thus, McWright is offering the acknowledgment as proof of Stroughter's belief that McWright was his illegitimate child. As evinced by Succession of Robinson, however, this presumption of parentage is open to contestation under Article 207. Robinson, 654 So.2d at 685. To read Article 207 to require those who may contest the claims of an illegitimate child to bring an entirely new action would be time consuming and unnecessarily burden the judicial system. We thus find that the defendants may contest Stroughter's claim that he is an illegitimate child in this proceeding.
Having determined that the defendants may contest the validity of Stroughter's formal acknowledgment in the instant proceeding, we next review the correctness of the lower courts' decision to grant the defendants' Exception of No Right of Action.
In discussing acknowledgment of a child in the context of successions, the Robinson court concluded that the validity of an acknowledgment depends on the existence of a biological relationship:
Although [the Civil Code] does not expressly preclude executing an acknowledgment where no biological relationship exits, this conclusion is self-evident and definitional of an acknowledgment. An acknowledgment is an avowal emanating from the "mother" or "father" to establish maternal or paternal filiation. The word "filiation" describes the fact of biological parentage. Thus, through the acknowledgment, the "mother" or "father" provides proof of maternal or paternal filiation, that is, biological parentage. Absent a biological relationship, the avowal is null. A fact cannot be avowed when it has never existed. If the acknowledgment is null, it produces no effects. (Citations omitted)
Robinson, 654 So.2d at 684. Thus, an Article 203 formal acknowledgment absent a biological relationship is a nullity.
The paternity test results revealed a 0% probability that McWright was Stroughter's child. Based on the principles adopted in Robinson, Stroughter's formal acknowledgment is null because McWright is not Stroughter's biological child. Therefore, the defendants have rebutted the presumption of parentage due to the absence of a biological relationship between the tort victim and McWright. Accordingly, the lower courts properly granted the defendants' exception of no cause of action because McWright does not belong to the class of persons who may recover wrongful death and survival damages as he is not the decedent's biological child.

CONCLUSION
Pursuant to La.Rev.Stat. 13:4231, we find that the 1982, 1983, and 1984 criminal stipulations of paternity are not binding on a defendant who was not a party to the criminal child support proceedings and that a defendant with standing to contest the paternity of an illegitimate child may relitigate the issue. Moreover, based on Article 207, we find that the defendants in this action, as named parties in a wrongful death and survival action in which the *420 plaintiff has claimed that he falls within the primary class of beneficiaries who may recover damages, has standing to contest the plaintiff's claim that he is the illegitimate child of the decedent. Accordingly, we affirm the lower courts and hold that the plaintiff, who was formally acknowledged as an illegitimate child, is not a child for the purposes of a wrongful death and survival action where he is not the biological child of the decedent.
AFFIRMED.
CALOGERO, C.J., dissents and assigns reasons.
KIMBALL, J., dissents and assigns reasons.
JOHNSON, J., dissents and assigns reasons.
VICTORY, J., concurs.
WEIMER, J., additionally concurs and assigns reasons.
CALOGERO, Chief Justice dissents and assigns reasons:
In addition to agreeing generally with the reasons given by Justice Kimball and Justice Johnson, I dissent from the majority decision because I believe that Onterio McWright qualifies as one of the "children" of decedent Andrew Stroughter as that term is defined by the Louisiana Civil Code for purposes of Louisiana's wrongful death and survival action statutes, La. Civ. Code. 2315.1 and 2315.2. Thus, I would reverse the court of appeal decision granting the exception of no right of action filed by the defendants in this case.
According to La.Code Civ. Proc. art. 927, an exception of no right of action tests whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. As the majority notes, "children" of a decedent fall within the primary category of persons designated by La. Civ.Code art. 2315.1(A) and 2315.2(A) as those who are allowed to assert wrongful death and survivor actions. Thus, the question presented by this case is whether Mr. McWright qualifies as one of Mr. Stroughter's "children" for purposes of the Louisiana Civil Code.
The word "children" is defined by La. Civ.Code art. 3506, in the section of the code entitled "Of the Signification of Sundry Terms of Law Employed in this Code," as follows:
Under this name are included those persons born of the marriage, those adopted, and those whose filiation to the parent has been established in the manner provided by law, as well as descendants of them in the direct line.
La. Civ.Code art. 3506(8) (emphasis added). Further, La. Civ.Code art. 207, relative to "Requirement to prove filiation," states as follows:
In order to establish filiation, a child who does not enjoy legitimate filiation or who has not been filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must institute a proceeding under 209.
(Emphasis added.) The above language contemplates three distinct methods by which an illegitimate child's filiation to a parent may be "established in the manner provided by law," therefore qualifying him as one of the decedent's "children" as that term is defined by La. Civ.Code art. 3506(8):(1) by legitimation either by subsequent marriage of the parents under La. Civ.Code art. 198 or by notarial act under La. Civ.Code art. 200, (2) by acknowledgment under La. Civ.Code art. 203, or (3) by instituting a proceeding under La. Civ. Code art. 209.
Although the majority states specifically that Mr. McWright is "a formally acknowledged *421 illegitimate child," it affirms the court of appeal decision granting the defendants' exception of no right of action. The majority's decision is based on the fact that the notarial act by which Mr. Stroughter formally acknowledged Mr. McWright as his child did not contain a declaration of his intent to legitimate the child. Thus, the majority implicitly holds, contrary to the language of the Louisiana Civil Code, that the only way an illegitimate child's filiation to a parent may be established is by legitimation. Since the Louisiana Civil Code clearly sets forth two other methods by which a person may qualify as a child, I disagree with the majority's conclusion.
Accordingly, I would find that Mr. McWright qualifies as one of Mr. Stroughter's children under the definition of that word set forth in La. Civ.Code art. 3506(8) because his filiation to Mr. Stroughter has been established by one of the three methods provided by law and enumerated in La. Civ.Code art. 207  i.e., by Mr. Stroughter's formal acknowledgment pursuant to La. Civ.Code art. 203. Thus, I respectfully dissent.
KIMBALL, Justice, dissenting:
I respectfully dissent on the basis that I find that the defendants cannot challenge the father Andrew Stroughter's acknowledgment, in which he admitted paternity and agreed to pay child support, many years after the judgment of child support became final. The child support judgment could only be challenged by an action for nullity within one year of the judgment under La. C.C.P. art.2004.
The majority asserts that La. R.S. 14:75.2 is criminal in nature, and therefore the peremptive one-year period under La. C.C.P. art.2004 does not apply. An acknowledgment of paternity should not be distinguished for consideration in civil and criminal suits. La. R.S. 14:75.2 provides for criminal neglect of family. The majority asserts that jurisprudence has held that a proceeding for criminal neglect of family must be converted into a paternity proceeding to establish a civil judgment of paternity, citing State v. Foss, 449 So.2d 159, 161 (La.App. 4 Cir.1984). However, La. R.S. 14:75.2 is a criminal remedy against a defendant who has not carried out his civil obligation to pay child support.[1] The statute has been repealed and now refers to articles in the Children's Code. The legislature did not intend that an acknowledgment should be treated differently for purposes of criminal punishment and the civil obligation of child support.
In State v. Foss, id., the issue was whether the act of legitimation could be considered as an acknowledgment. The Fourth Circuit stated:
Defendant also argues that the criminal proceedings were improperly converted into a paternity hearing. We do not agree.
Defendant was charged with having violated La.R.S. 14:74. One of the elements which the State must prove is a pre-existing civil liability on the part of defendant to support the minor child. In the case of an illegitimate child this element may be established in *422 one of two ways, viz. by an acknowledgment before a notary public and two witnesses, or by a judgment establishing paternity. State v. Mack, 224 La. 886, 71 So.2d 315 (1954); State v. Braxton, 238 La. 13, 113 So.2d 292 (1959).
In this case the State offered the "Act of Legitimation" as proof of defendant's pre-existing civil liability to support the minor child. The trial court ruled, and we have affirmed, that the "Act" constituted a formal acknowledgment, by defendant, of the child. This procedure constitutes a necessary part of the State's case at trial. It does not improperly convert the criminal proceedings into a paternity suit. This contention by defendant is without merit. (Emphasis added.)
Id., 449 So.2d at 161.
Foss supports the fact that the criminal statute was a remedy concerning the pre-existing civil liability. The child support obligation is civil in nature, and is utilized under the criminal statute for failure to pay child support. The child support guidelines are provided under R.S. 9:315.2 et seq. rather than in the Code of Criminal Procedure. The acknowledgment of paternity can be asserted under both civil and criminal procedural law and should not be treated differently in either criminal or civil matters.
The one year limitation of La. C.C.P. art.2004[2] applies to an acknowledgment. It is considered as a period of peremption rather than prescription. Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291; Burkett v. Property of Douglas, 575 So.2d 888, 892 (La.App. 2 Cir.1991). Statutes of peremption destroy the cause of action itself; after the time limit expires, the cause of action is lost and no longer exists. La. C.C. 3458; Reeder, supra; Russland Enterprises, Inc. v. City of Gretna, 98-676 (La. 5 Cir. 1/26/99) 727 So.2d 1223. The proper procedural device for raising an issue of peremption is an exception of no cause of action. Id.
In any case, the stipulation entered into by the father in the child support suit evidenced, in my view, an intent to acknowledge McWright as his child pursuant to La.R.S. 9:315.2 et seq. In his stipulation, Stroughter conceded that he was the father of McWright. Stroughter had a reasonable belief that he was the father of the child, showed his intent to acknowledge McWright as his child by stipulating his paternity in court, and paid child support for him until he was 18. This indicates to me that he was the father.
Before DNA testing existed, the courts relied on other means of determining paternity. The acknowledgments that were previously acceptable should not be thrown out because of the possibility of DNA testing that was not available when previous acknowledgments took place. The State's public policy is to provide for the well-being of children. The majority's resolution undermines the public policy of the State and the legislature's intent in enacting the applicable statutes. See La.C.C. art. 7.[3] Outside parties should not be able *423 to come in now and request DNA testing of acknowledgments that were valid for many years. The stipulated acknowledgments and resulting judgments in previous civil and criminal cases should remain valid and final. They should only be challenged within the one year period from the discovery of any fraud or ill practices[4] under La. C.C.2004.
I cannot find that the legislature intended that past valid acknowledgments should be disregarded. Legislation has not been changed to indicate that DNA testing can now be used for this purpose.
JOHNSON, Justice, dissenting:
I respectfully dissent from the majority's decision on the basis that La. C.C. art. 207 discriminates against illegitimate children based on circumstances incident to their status at birth and thereby deprives them of equal protection of the laws. Article I, Section 3 of the Louisiana Constitution[1] and the Fourteenth Amendment to the United States Constitution[2] provide that "no person shall be denied the equal protection of the laws." In cases involving a person's status as legitimate or illegitimate, Louisiana courts apply intermediate scrutiny. Pace v. State, through Louisiana State Employees Retirement System, 94-1027 (La.1995) 648 So.2d 1302, 1305. As this Court found in Pace,
"A law that treats illegitimate children less favorably than legitimate ones discriminates between them because of birth and is unconstitutional unless the state carries its burden of showing that the classification substantially furthers a legitimate state purpose."
Id. at 1305.
Over thirty years ago, this Court began conferring upon illegitimate children the same rights as legitimate, legitimated, and adopted children when it adopted the holding of the United States Supreme Court in Levy v. Louisiana. Levy v. Louisiana, 253 La. 73, 216 So.2d 818 (1968). In Levy, this Court acknowledged that denying an illegitimate child a right of action under La. C.C. art. 2315 is a violation of that child's right to equal protection under the laws where a parent "openly and publicly recognizes and accepts an illegitimate to be his or her child and the child is dependent upon the parent." Id. at 820.
*424 In the wake of Levy, this Court extended equal protection to recover for the death of a parent to illegitimate children in the same manner previously enjoyed by legitimate, legitimated, and adopted children. For example, in Weber v. Aetna Casualty & Surety, unacknowledged illegitimate children were granted a cause of action to recover workers' compensation survival benefits in Louisiana. Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 171-72, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). Subsequently, the decision rendered in Pace v. State similarly allowed informally acknowledged illegitimate children to recover survivors benefits from the Louisiana State Employees Retirement System. Pace v. State, 648 So.2d 1302, 1310.
In recent years, however, this Court has engaged in an unsettling trend of permitting defendant tortfeasors to undermine the equal protection rights of illegitimate children in an effort to limit their liability, and in some cases avoid it altogether. In Jenkins v. Mangano Corp., the defendant was allowed to assert filiation on behalf of the victim's illegitimate daughter where she would not have been able to assert such an action herself. Jenkins v. Mangano Corp., 00-0790, (La.11/28/00), 774 So.2d 101. In Jenkins, the victim died without any legitimate or acknowledged illegitimate children. Id. at 103. His daughter never made any efforts to filiate herself to her father within the time limits allowed by La. C.C. art. 208. Id. at 105. However, to support a peremptory exception of no right of action against the victim's mother, the defendants were permitted to assert that the victim had informally acknowledged his daughter, even though it was then two years after the victim's death and twenty-six years after the daughter's birth. Id. at 103. By allowing the defendant to assert filiation in this manner to defeat the mother's claim, the defendants were essentially given greater rights as to the daughter's status as an illegitimate than she herself had. Id. at 106 (Johnson, dissenting).
Similarly, in the case sub judice, defendants' have been permitted to rescind the victim's acknowledgment of Onterio McWright, even though the decedent, Stroughter, never made any attempt to do so. McWright is the acknowledged illegitimate child of Andrew Stroughter. Stroughter executed a notarized stipulation that serves as a formal acknowledgment of paternity in 1982, and reaffirmed his belief that McWright was his biological child in stipulations executed in 1983 and 1984. Furthermore, Stroughter supported McWright financially through child support payments until adulthood. La. R.S. 9:392(7)(b) allows an alleged father to rescind an acknowledgment at any time, where he is not the biological father of the child. No evidence was presented that Stroughter attempted to institute proceedings to rescind his acknowledgment. It is therefore clear that Stroughter believed that McWright was his child, and continued in this belief up to the time of his death.
Article 207 denies both acknowledged and unacknowledged illegitimate children equal protection under the law by subordinating their claims to those of legitimate, legitimated, and adopted children. If McWright had been born of a marriage between Stroughter and Harris, or if McWright had been legitimated by authentic act, then his wrongful death claim could not have been challenged by the defendants under Article 207, even if, as is the case here, he did not have a biological relationship with Stroughter. In fact, had the situation been reversed, and McWright perished in an accident without issue, Stroughter, as his acknowledged father, could have recovered in a wrongful death *425 action and Stroughter's claim would not have been subject to challenge, even though the two have no biological relationship. The State's goal of averting fraudulent claims asserted by purported illegitimate children is not furthered by upsetting long established familial relationships and subjecting the claims of all illegitimate children to attack by "any party", especially where the child has been formally acknowledged and financially supported by the decedent. Such a result has the effect of denying illegitimate children the equal protection of the laws.
WEIMER, J., concurring.
I concur in the majority's holding in this case and write separately only to point out that adoption can serve the same purposes as a biological relationship for purposes of affording a cause of action for wrongful death and survival damages pursuant to LSA-C.C. arts. 2315.1 and 2315.2. See, LSA-C.C. art. 214.
NOTES
[1] La.Rev.Stat. 14:75.2, which was repealed by Acts 1993, No. 442, § 4, effective June 9, 1993, stated:

In cases in which the responsible parent or other persons owing a duty of support and the district attorney stipulate to an order of support, the court shall have the power to issue an order of support under the provisions of R.S. 14:75 without the necessity of instituting criminal proceedings.
[2] Civ.Code art. 2315.1, which provides for a survival action, states in pertinent part:

A. If a person who has been injured by an offense or quasi-offense dies, the right to recover all damages for injury to that person, his property, or otherwise, caused by the offense or quasi-offense, shall survive for a period of one year from the death of the deceased in favor of:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
In addition, Civ.Code art. 2315.2, which provides for a wrongful death action, states in pertinent part:
A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
[3] La.Code Civ. Proc. art.2004 provides:

A. A final judgment obtained by fraud or ill practices may be annulled.
B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiffs in the nullity action of the fraud or ill practices.
[1] LSA-R.S. 14:75.1 and 14:75.2 were repealed by Acts 1993, No. 442, § 4, effective June 9, 1993. Under the Historical and statutory notes following the repealed statute states in part:

The repealed sections related, respectively, to allocation of arrearages collected from a person adjudged guilty of criminal neglect, and to stipulation to an order of support....
See, now, Ch.C. arts. 1354, 1355. (Emphasis added.)
[2] La. C.C.P. art.2004 states:

Art.2004. Annulment for vices of substance; peremption of action
A. A final judgment obtained by fraud or ill practices may be annulled.
B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
C. The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.
[3] La. C.C. art. 7 provides:

Art. 7. Laws for the preservation of the public interest
Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.
[4] La. C.C.P.2004, permitting annulment of any final judgment obtained by fraud or ill practices is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure. Belle Pass Terminal, Inc. v. Jolin, Inc., XXXX-XXXX (La.10/16/01), 800 So.2d 762.
[1] LSA-Const. Art. 1, Sec. 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the later case as punishment for crime.
[2] U.S.C.A. amend. XIV provides, in pertinent part:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.