GASKINS (Ad Hoc ), J.
In this medical malpractice lawsuit, Philip Deron Washington appeals a judgment granting defendants' exceptions of no right of action and dismissing his lawsuit because he failed to timely assert a filiation claim. Concluding that Washington timely asserted a filiation claim, we vacate the judgment and remand.
FACTS
Willie P. Pennywell ("Pennywell") was a resident at Magnolia Manor Nursing Home located in Shreveport. On February 27, 2014, Pennywell was taken to the Emergency Room at Willis Knighton Medical Center ("WKMC") after he was found bleeding from the mouth. Dr. Jacquelyn Bowers, the emergency room physician, consulted with Dr. Christopher Atkins, who extracted a deteriorated molar from Pennywell's mouth. Pennywell was discharged to Magnolia Manor later that day. Unfortunately, Pennywell died that night from asphyxia due to obstruction of air passages caused by clotted blood.
On February 13, 2015, Phillip Washington Pennywell ("Washington") filed on behalf of Pennywell a request for a Medical Review Panel against WKMC, Magnolia Manor, and Dr. Bowers. Nowhere in the complaint did Washington state his relationship to Pennywell. On December 9, 2015, Washington filed an amended complaint in which he alleged for the first time that he was the child and sole heir of Pennywell. Dr. Atkins and University Health-Shreveport were named as additional defendants.
On December 19, 2016, following the dissolution of the Medical Review Panel, Washington, now using the name "Phillip Deron Washington," filed a medical malpractice *158 lawsuit seeking survival and wrongful death damages against Dr. Atkins, Dr. Bowers, Magnolia Manor, Willis Knighton Medical Center, and the State of Louisiana.
WKMC and Dr. Bowers filed the exception of no right of action. They argued that Washington was required to prove filiation to Pennywell by clear and convincing evidence in a civil proceeding instituted within one year of Pennywell's death. Attached to their memorandum in support of the exception was Washington's birth certificate, which listed no father. These defendants noted that the words "filiation," "illegitimate," and "acknowledgement" were not mentioned in the petition. They added that the petition did not state that Washington is Pennywell's illegitimate child, that he was ever formally or informally acknowledged by Pennywell, or that he is entitled to filiation.
Dr. Atkins and the State of Louisiana also filed the exception of no right of action. They asserted that there were no allegations in the petition or documents attached to the petition that established Washington's right to sue or qualified him as a beneficiary under La. C.C. arts. 2315.1 or 2315.2. Magnolia Manor also filed the exception of no right of action, adopting the arguments of its codefendants.
Washington argued in opposition to the exceptions of no right of action that he timely raised the issue of paternity because his December 14, 2015, amended medical complaint, which stated that he was the child and sole heir of Pennywell, related back to the original complaint. Washington asserted that this meant that he had instituted a civil proceeding alleging that he is the child and sole heir of Pennywell within one year of Pennywell's death. Washington noted that one method of establishing paternity is for the child to bring an action to prove filiation under La. C.C. art. 197. He then referred to the comments to that article, which provide that all relevant evidence is admissible to prove paternity and that an example of relevant evidence is an informal acknowledgement. Attached to Washington's opposition were what he considered to be evidence of informal acknowledgement, namely an affidavit from decedent's sister, and the programs from the funerals of Pennywell and Pennywell's mother. Washington also claimed that his mother was available to testify.
Before considering the filiation issue, the trial court stated at the hearing on the exceptions that the issue was whether or not the amended complaint related back to the original complaint that was filed within the one-year period following Pennywell's death. The trial court subsequently granted the exceptions of no right of action. The court considered Ratliff v. LSU Bd. of Supervisors , 2009-0012 (La. App. 4 Cir. 5/7/10), 38 So.3d 1068, writs denied , 2010-1312 (La. 9/24/10), 45 So.3d 1079 and 2010-1314 (La. 9/24/10), 45 So.3d 1080, where the appellate court held that the petition for filiation clearly related back to the supplemental and amended petition because it arose out of the same factual situation set forth therein. The trial court noted that if there had been some indication in the original complaint that Washington was Pennywell's child, then the court could reason that the amended complaint raised a filiation complaint that related back. However, based on the supreme court's ruling in Naghi v. Brener , 1 2008-2527 (La. 6/26/09), 17 So.3d 919, the *159 court concluded that the amended complaint filed more than a year after the date of Pennywell's death did not relate back to the original complaint.
Washington appealed the judgment granting the exceptions of no right of action and dismissing his lawsuit.
DISCUSSION
The function of an exception of no right of action is to determine whether a plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. La. C.C.P. art. 927 ; Turner v. Busby , 2003-3444 (La. 9/9/04), 883 So.2d 412. The exception of no right of action serves to question whether the plaintiff in the particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation. Id.
To recover under a claim for wrongful death and survival damages, a plaintiff must fall within the class of persons designated as a beneficiary under La. C.C. arts. 2315.1 and 2315.2. Turner v. Busby , supra . The primary category under both wrongful death and survival actions includes "children" of the decedent. Reese v. State Dept. of Public Safety & Corrections , 2003-1615 (La. 2/20/04), 866 So.2d 244.
The exception of no right of action presents a question of law; therefore, a court conducts a de novo review of the trial court's action on these exceptions. Waggoner v. America First Ins. , 42,863 (La. App. 2 Cir. 1/16/08), 975 So.2d 110.
La. C.C. art. 197, which governs an action by a child to establish paternity, provides:
A child may institute an action to prove paternity even though he is presumed to be the child of another man. If the action is instituted after the death of the alleged father, a child shall prove paternity by clear and convincing evidence.
For purposes of succession only, this action is subject to a peremptive period of one year. This peremptive period commences to run from the day of the death of the alleged father.
We note that the second paragraph of art. 197 article refers to a peremptive period of one year "[f]or purposes of succession only[.]" No other time limit is mentioned in the article. Comment (e) to the article states:
The time period for bringing the paternity action under this Article is limited to succession matters only. This is a change in the law. The time for instituting a paternity action for the purpose of exercising the right to support, to sue for wrongful death, or to claim Social Security benefits or the like, is not limited by this Article.
Therefore, except in the case of a succession, art. 197 eliminated a time limit for bringing a filiation claim.
As this matter does not involve a succession, the peremptive period found in art. 197 does not apply. However, because Washington was born forty-one years before art. 197 was enacted, our inquiry does not end there. We must also examine La. C.C. art. 209, which set forth time limits for filiation claims beginning in 1980 and which art. 197 replaced in 2005.
La. C.C. art. 209 was amended in 1980 to provide methods of proving filiation and the time periods in which to do so.[2] According *160 to Washington's birth certificate, he was born on October 10, 1964. When he turned 19 in 1983, art. 209 read:
Art. 209. Proof of filiation
.....
C. The proceeding required by this Article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation.
.....
Therefore, Washington was required at that time to bring a filiation action no later than October 10, 1983, which he failed to do.
The time limit in Article 209 to bring a filiation action was modified again in 1984, so that art. 209(C) read, in part:
If the proceeding is not timely instituted, the child may not thereafter establish his filiation, except for the sole purpose of establishing the right to recover damages under Article 2315. A proceeding for that purpose may be brought within one year of the death of the alleged parent and may be cumulated with the action to recover damages.
Thus, paragraph (C) established an exception for filiation actions brought for the sole purpose of establishing the right to recover damages in survival and wrongful death actions.
This exception indicated that an illegitimate child who had not timely instituted a filiation action before turning 19 when the father was still alive, nevertheless thereafter had the right to establish filiation for the sole purpose stated above. This interpretation is supported by the jurisprudence. In Reese v. State Dept. of Public Safety & Corrections , supra , the supreme court stated:
Under Article 209(C), the general rule is that a child must bring an action for filiation within one year of reaching the age of majority. Thomas v. Sister of Charity of the Incarnate Word Shreveport , 97-1443, p. 3 (La. 7/8/98), 713 So.2d 466, 467. However, if the child is a minor at the time of his/her alleged parent's death, the child must bring the action within one year of the alleged parent's death, regardless of the child's age. Id. Thereafter, the child may not establish filiation after the occurrence of either of these events-one year from majority or one year from the death of the alleged parent. Id. However, Article 209(C) provides an exception as to when a filiation action may be brought for the sole purpose of establishing the right to recover damages under Article 2315. Id. at pp. 3-4, 713 So.2d at 467-8. Thus, the purpose of this exception appears to be to allow the child who is over the age of nineteen at the time of the alleged parent's death to bring a filiation action, but only for the purposes of establishing the right to recover survival or wrongful death damages and not for any other purpose such as recovering succession rights . Id. Importantly for the case at hand, Article 209(C) also provides that a *161 petition for damages under La. Civ. Code art. 2315 and a petition for filiation may be filed in the same proceeding at the same time.
Emphasis added.
In Gibbs v. Delatte , 2005-0821 (La. App. 1 Cir. 12/22/05), 927 So.2d 1131, writ denied , 2006-0198 (La. 4/24/06), 926 So.2d 548, the First Circuit noted that one of the legislature's main purposes for imposing time limitations in art. 209(C) was to bar future succession claims if a filiation action was not timely instituted. That appellate court stated it was arguable that art. 209(C) did not intend to deprive an illegitimate child of the right to bring a wrongful death claim, nor could it constitutionally do so. The court in Gibbs further stated this was illustrated when the art. 2315 exception was added to paragraph (C) in 1984.
In Succession of Grice , 462 So.2d 131 (La. 1985), the supreme court considered whether art. 209's requirement that filiation proceedings be brought within 19 years of the child's birth was substantially related to a permissible state interest. In upholding the constitutionality of art. 209, the supreme court concluded that the state had a substantial and permissible interest in providing for the just and orderly disposition of property at death when the intestate paternal inheritance of illegitimate children was at issue. The supreme court stated that the exception added in 1984 "illustrate[d] that the state's interest in providing for the just and orderly disposition of property at death is greater than its interest in the distribution of an award for damages under art. 2315." Id. , 462 So.2d at 136.
Finally, we note that comment (e) to art. 197 provides, in part:
Prior law required that a paternity action under former Civil Code Article 209 (rev. 1984) be instituted within nineteen years of the child's birth or within one year from the alleged parent's death, whichever first occurred. If the action was not timely instituted, the child could not thereafter establish his filiation for any purpose, except to recover damages under Civil Code Article 2315. That was a harsh result not justified by any policy consideration.
Accordingly, we conclude that the art. 2315 exception added to art. 209(C) in 1984 applied to Washington's situation. Washington, who turned 19 in 1983 without having instituted a filiation action against his living alleged father, could establish his filiation to recover damages under art. 2315.[3] That is what Washington is attempting to do in this matter.
Pennywell died in 2014. Therefore, Washington's right to establish his filiation for the purpose of recovering damages under art. 2315 was still viable and in existence when Act 192 of 2005 amended and reenacted the first three chapters of Title VII of Book I of the Civil Code, which included art. 197. Section 3 of Act 192 stated, "The provisions of this Act shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date." Because art. 197 removed the time limits for bringing filiation claims except in succession matters, following its effective date, Washington was no longer subject to a time limit to bring a filiation claim for the sole purpose of establishing the right to recover damages under Article 2315.
*162 We note that Article 197 has been held to apply prospectively only, including by this court. See Thomas v. Roberts , 47,411 (La. App. 2 Cir. 9/26/12), 106 So.3d 557 ; Meaux v. Guidry , 2014-155 (La. App. 3 Cir. 6/4/14), 140 So.3d 871, writ denied , 2014-1389 (La. 10/3/14), 149 So.3d 799. However, those cases are readily distinguishable as they held that filiation claims that were already time-barred under art. 209 could not be revived by the enactment of art. 197 as it would deprive the defendant of the right to plead prescription or peremption. As stated earlier, Washington's filiation claim in a 2315 action was not time-barred when art. 197 was enacted, so there was nothing for art. 197 to revive in this instance. More recently, this court applied art. 197 retroactively in the specific context of a succession in Succession of Younger , 50,876 (La. App. 2 Cir. 9/28/16), 206 So.3d 1088, writ denied , 2016-2202 (La. 1/25/17), 215 So.3d 685.[4] Also, in In re Succession of Harrison , 48,432 (La. App. 2 Cir 11/8/13), 129 So.3d 681, writ denied , 2014-0273 (La. 4/4/14), 135 So.3d 1185, this court looked to art. 197 to determine whether a child who was born in 1941 asserted a timely filiation claim in the succession of his alleged father, who died in 2011. This court held that the plaintiff had initiated a filiation claim within a year of his alleged father's death when he asserted that he was the decedent's sole heir in a 2011 motion to compel turnover of succession property.
Finally, compare Ratliff v. LSU Bd. of Supervisors , supra , which the trial court considered before finding that Washington had not timely raised his filiation claim. Ratliff, who died in 2007 after having filed a medical malpractice claim for treatment received in 2003, was the alleged father of Thompson, born in 1972, and Banks, born in 1973. Within a year of their father's death, Thompson and Banks filed a supplemental and amended petition in the medical malpractice lawsuit asserting survival and wrongful death claims. However, it was more than a year after their father's death that they filed a petition for filiation. The Ratliff court concluded that under arts. 209(C), 2315.1, and 2315.2, the supplemental and amended petition asserting their status as children of Ratliff was timely and interrupted prescription for the filing of the filiation petition. We decline to follow Ratliff insofar as art. 197 was not considered to resolve the issue of whether the cumulated filiation action was filed timely.[5]
In summary, as long as a petition is filed timely, a plaintiff has no peremptive limits in which to assert his right of action arising out of the relationship with his father in a non-succession case. Washington timely requested a Medical Review Panel ("Panel") within one year of Pennywell's death. He amended his Panel complaint to allege that he was the child and sole heir of Pennywell.[6] After the dissolution of the *163 Panel, Washington timely filed this medical malpractice lawsuit. The defendants then contested Washington's right to bring this lawsuit by filing the peremptory exception of no right of action. Therefore, no time limit was imposed upon Washington that required him to assert his filiation prior to the defendants' filing of the exception of no right of action.
Based on the foregoing discussion, we conclude that the trial court erred in granting the exceptions of no right of action on the ground that Washington did not timely bring a filiation claim.
Defendants argue that even if Washington's right to assert filiation has not expired, the judgment should still be affirmed because Washington failed to prove filiation. Washington was required by art. 197 to prove paternity through clear and convincing evidence.
During the hearing on the exceptions, Washington's attorney referred to the affidavit from Pennywell's sister and the programs from the funerals of Pennywell and his mother. His attorney also stated that Washington's mother was still alive and could testify. Before taking the matter under advisement, the trial court stated:
Just for ruling only so I can let you know what I'm looking for, simply put is whether or not the amended complaint relates back to the original complaint which was filed within the one year period. Simple issue as far as when I read your exception and opposition that is the issue, even though there were-I think somebody just answered, Mr. Bookter, or someone just said, I'm just riding along with the other one. So, that's the only issue that I will be looking at.
The court granted the exceptions of no right of action because the amended complaint could not relate back to the original complaint, which had not given any indication that Washington was Pennywell's child. Accordingly, the trial court never considered, nor was there presented, any evidence in support of the filiation claim at the hearing that dealt exclusively with the issue of whether Washington had timely made a filiation claim. We remand this matter for the trial court to conduct a filiation hearing and to reconsider the exceptions of no right of action. In doing so, we are not suggesting whether Washington will be able to meet the onerous clear and convincing standard.
CONCLUSION
At appellees' costs of $1,100.00, the judgment is VACATED and the matter REMANDED.
MOORE, J., dissents and assigns reasons.
MOORE, J., dissents.
I respectfully dissent. I do not disagree with the majority's exegesis of La. C.C. art. 197 and former La. C.C. art. 209, or with the ultimate conclusion that the now-repealed Art. 209 C set no time limit on the action for filiation if the plaintiff was seeking tort damages on the alleged parent's behalf.
However, the real issue in the case is one of relating back . Using the name Phillip Washington Pennywell, the plaintiff filed a timely request for MRP for the wrongful death of Willie Pennywell. Phillip made no allegation of his relationship to the decedent. Later, after the prescriptive period for medical malpractice had elapsed, he filed an amended request for MRP alleging he was the child and sole heir of the decedent. (Still later, using a different name, he filed this medical malpractice *164 suit, again making no allegation of his relationship to the deceased.) The defendants filed exceptions of no right of action on grounds that there was no proof that Phillip was the son of the decedent. Hence, the issue is whether the amended request for MRP, which raised the issue of filiation, related back to the original request for MRP, which did not.
The general rule for relating back is that "a comparison of the amended petition to the original petition shows that the original petition gave fair notice of the factual situation out of which the amended petition arises." Giroir v. South Louisiana Med. Ctr. , 475 So.2d 1040 (La. 1985). In Reese v. State , 2003-1615 (La. 2/20/04), 866 So.2d 244, the Supreme Court explicitly found that the plaintiff's original petition contained an allegation of paternity, viz. , that he was "a surviving child of" the deceased. In the instant case, the district court was, in fact, legally correct when it used this fact to distinguish Ratliff v. LSU Bd. of Sup'rs , 2009-0012 (La. App. 5/7/10), 38 So.3d 1068, writ denied , 2010-1314, -1312 (La. 9/24/10), 45 So.3d 1079, 1080.
Phillip's original request for MRP, by contrast, makes absolutely no allegation of paternity. It is incomprehensible that total silence as to an issue can place the defendant on fair notice. Using the majority's analysis, any petition would be sufficient to preserve the claim of filiation in a tort action.
I would affirm the district court's sound judgment.

As amended in 1980, La. C.C. art. 209 provided that a civil proceeding to establish filiation was required to be brought within six months after the death of the alleged parent, or within 19 years of the illegitimate child's birth, whichever occurred first. If no proceeding was timely instituted, the claim of an illegitimate child or on its behalf to rights in the succession of the alleged parent was forever barred. The time limitation ran against all persons, including minors and interdicts.
Article 209 was amended again the following year. It required that the filiation proceedings be brought "within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs." The article stated, "[i]f the proceeding is not timely instituted, the child may not thereafter establish his filiation." This same time limitation remained after art. 209 was amended in 1982.

In 1986, the legislature restructured the survival and wrongful death actions by reenacting Article 2315, and enacting 2315.1, the survival action, and 2315.2, the wrongful death action. Although art. 209 was not amended to correspond with these changes, the connection between art. 209 and the new articles remained clear.

In reaching that result, this court relied on Comment (e) to art. 197 as well as La. C.C. art. 870. Article 870 provides that succession rights are governed by the law in effect on the date of the decedent's death. The alleged father died in 2015.

The defendants in Ratliff argued on appeal that Thompson's and Banks's rights to filiate were perempted under art. 197, or alternatively as required by art. 209(C), their claims had prescribed because they had not filiated with Ratliff prior to their 19th birthdays. Thompson and Banks countered that the art. 2315 exception in art. 209(C) allowed them to bring the filiation action within a year of Ratliff's death and cumulate that action with the one to recover damages. They also pointed out that the time limit in art. 197 only applied to succession proceedings.

When a medical review panel is requested, the person requesting the medical review panel does not have to assert their relationship to the person against whom the malpractice was committed, according to the statutes regarding medical malpractice. See La. R.S. 40:1231.8 and 40:1237.2.